Joseph SELLMAN, Plaintiff,

v.

BARUCH COLLEGE OF the CITY UNIVERSITY OF NEW YORK and Baruch College Association and Baruch College Day Session Assembly and Baruch College Senate Election Committee, Defendants.

79 Civ. 4485.

United States District Court,
S. D. New York.

Nov. 16, 1979.

Lake, Bogan, Lenoir & Jones, P. C., New York City, for plaintiff; J. Kip Lenoir, New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants; Joseph F. Bruno, George Gutwirth, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

This is an action to declare void a provision of the Day Session Student Constitution (the "student constitution") adopted by the Day Session students of the Bernard M. Baruch College of the City of New York

("Baruch College"). Baruch College, named as a defendant, is a constituent unit of the City University of New York, a publicly-funded university administered by the Board of Higher Education of the City of New York.[1] Ninety percent of the Day Session students are enrolled on a full-time basis, that is, for more than twelve hours of credit.[2] Plaintiff is a part-time Day Session student, enrolled for six hours of accredited course work at the school. At the time of the events challenged here, he had earned a grade point average of 2.1 on a scale that ranges up to 4.0.[3]

The plaintiff sought to enter his name as a candidate for nomination to the Baruch College Association Board of Directors, an elective position in the Day Session Student Government of the College. He was found not qualified as a candidate by the College Election Committee because he failed to satisfy those provisions of the student constitution that require all candidates for elective positions in the student government to "be registered for a minimum of 12 credits . . . [and to] have achieved an overall grade point average of at least 2.5 at the time of candidacy."[4] It is undisputed that plaintiff met neither of these criteria.

Moreover, the parties agree that the powers of all branches of the Day Session Student Government, including those of the Baruch College Association, are established under its student constitution, which was adopted and ratified in a referendum by Day Session students in January 1979. Under the student constitution, the student elections are funded by monies provided by the defendant Baruch College Association, Inc. The various branches of the student government are vested with control over

certain non-tax funds, raised by levying student fees, that are expended in student activities. At oral argument the plaintiff represented, without contradiction, that the office to which he aspired is part of a group of faculty and students who jointly approve disbursements of money for student activities, and that faculty members are involved, at least in an advisory capacity, in all phases of the student government.

Upon these facts the plaintiff asserts that Baruch College, and the constituent branches of its student government, curtailed his fundamental rights of expression by denying him a place on the ballot. He alleges that the actions of his fellow students in ratifying the student constitution, and of the Election Committee in enforcing it, constitute state action, and that the provisions barring his candidacy are arbitrary and unreasonable infringements on his rights under the First, Fifth and Fourteenth Amendments to the United States Constitution.

The City has moved for summary judgment. It contends that the actions of Baruch College's students are distinct from those of the College itself; that they are more akin to private acts of private parties, and thus, are not subject to the strictures of the Fourteenth Amendment. In addition, the defendants as a group argue both that there is no fundamental right to vote in student elections, and that the electoral requirements at issue here are reasonable measures adopted in pursuit of legitimate goals.

■ A threshold issue is whether the actions of the student body in adopting the constitution with its limitation of candidacy to full-time students with prescribed grades can fairly be ascribed to the state. For "embedded in our constitutional law" is the

1. See generally, N.Y.Educ.Law §§ 6202, 6208, 6214–16 (McKinney's 1972 & Supp.1978). The statute specifically provides a formula under which the College's expenses are apportioned between the City and the State. Id. § 6216 (McKinney's Supp.1978).

2. Affidavit of Dr. Jay Finkelman, Dean of Students, ¶ 9. Plaintiff does not dispute this information, although he does claim that other units in the City University system have higher per-

centages of part-time students. That fact, however, is not relevant to the issues presented in this case.

3. In order to be in good standing and to qualify for graduation from Baruch College, a student must maintain an average of at least 2.0.

4. Day Session Student Constitution, Art. V sec. 10 (ratified January 1979).

principle "that the action inhibited by . . . the Fourteenth Amendment is only such action as may fairly be said to be that of the States. That Amendment erects no shield against merely private conduct, however discriminatory or wrongful."[5] Whether a particular action shows the requisite degree of state participation and involvement can be determined "[o]nly by sifting facts and weighing circumstances . . . ."[6]

In *Burton v. Wilmington Parking Authority*[7] the Court held that a private, racially segregated restaurant that rented facilities on the premises of a publicly owned and operated garage could not use its "private" status to escape the reach of the civil rights laws. In finding state action, the Court noted that the parking lot upon which the restaurant operated was built with public funds for public purposes; that the garage itself remained publicly owned and operated; that the public was responsible for the upkeep and maintenance of the entire facility; and that the peculiarly symbiotic relationship of the parking garage and the restaurant conferred mutual benefit on both. Under these circumstances, the Court held that the "State has so far insinuated itself into a position of interdependence with [the restaurant] that it must be recognized as a joint participant in the challenged activity . . . ."[8]

The facts in the instant case appear even more compelling than those in *Burton, supra.* Although City officials did not write or ratify the challenged provisions of the student constitution, the City was nevertheless a "joint participant" in the challenged activity. Baruch College is a public institution, built for public purposes, funded with public money, and staffed by public employees. Although the student government enjoys a measure of autonomy, nevertheless it is a creature of governmental agencies. Its branches are advised and guided by faculty members; its constitution is required to be compatible with guidelines fostered by the Board of Higher Education; the Dean of Students, a government employee, is the final arbiter of election disputes. The student government receives money, both to cover its operating expenses and to fund the activities it supervises, from mandatory student fees collected by the College from the entire student body.[9] Finally, its meetings are held on campus during hours specifically set aside by the College for student activities; thus, it may be presumed that both the College and the students derive benefit from this interlocking relationship. Although none of these factors, standing alone, would constitute the requisite degree of state involvement,[10]

---

5. *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948) (citation omitted). *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); *Gilmore v. City of Montgomery*, 417 U.S. 556, 572–74, 94 S.Ct. 2416, 41 L.Ed.2d 304 (1974); *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722–23, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

6. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 722, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961). *Accord Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 172, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972); *Evans v. Newton*, 382 U.S. 296, 299–300, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966).

7. 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961).

8. *Id.* at 725, 81 S.Ct. at 862.

9. Baruch College Bulletin: Undergraduate Programs 1979–80, at 10. Although the parties did not offer this book with their moving papers, the Court takes judicial notice of its contents. *See* Fed.R.Evid. 201.

10. This is not a case in which plaintiff seeks to subject a *private* university to the requirements of the Fourteenth Amendment merely because it is subject to state regulation, *see, e. g., Weise v. Syracuse University*, 522 F.2d 397, 405 (2d Cir. 1975); *Powe v. Miles*, 407 F.2d 73, 81 (2d Cir. 1968); or because it has accepted some measure of public funds, *see Weise, supra* at 405; *Wahba v. New York University*, 492 F.2d 96, 100 (2d Cir.), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974); or because it has a tax-exempt status, *see Stewart v. New York University*, 430 F.Supp. 1305, 1309–10 (S.D.N.Y.1976). Indeed, even the actions of private institutions are subject to the requirements of the constitution and of the civil rights laws when there has been a sufficient showing of state involvement in the challenged activity.

in combination, they do. The plaintiff has met the threshold requirement. The state is sufficiently involved in the governance and control of Baruch College that the actions of its student government may be attributed to the state itself; the policies of the student government are held to the same constitutional standards as those that apply to the state.[11]

It remains for the plaintiff to demonstrate an injury to his constitutional rights. In seeking to do so, plaintiff invites the Court to exercise "strict judicial scrutiny"[12] of the challenged policies, and to invalidate them unless they can be supported by some compelling justification. In order to prevail under this reasoning, the plaintiff must show either that the election regulations "operate[ ] to the disadvantage of some suspect class or impinge[ ] upon a fundamental right explicitly or implicitly protected by the [United States] Constitution . . .."[13]

■ With respect to the first prong of the test, the plaintiff alleges that he is a "minority student," and that "[a] large percentage of minority students . . . attend [Baruch College] on a part-time basis" and thus, are ineligible for elective office in the student government. Although the moving papers are not explicit on this point, we take plaintiff's assertion to mean that

he is a member of a *racial* minority group rather than merely a member of the minority of day session students who attend Baruch College on a part-time basis. Apart from identifying himself as such, plaintiff offers nothing that would even remotely support a contention that the policies at issue here are racially discriminatory. No data are presented to show the racial composition of Baruch College or to illustrate whether the ten percent of Baruch's day session students who attend on a part-time basis are in fact disproportionately comprised of students from racial minority groups. In fact, plaintiff does not claim that either the intent or the effect of the policies is to disenfranchise a disproportionate percentage of Baruch College's minority students. Nor is there any showing that the policy discriminates against any definable category of "poor" people. In the absence of such a claim, we cannot conclude that the student policy has infringed the rights of any "suspect class."

■ The plaintiff's basic contention is that the "right" to vote in student elections is "fundamental." In support of this contention he cites many cases in which courts have struck down discriminatory restrictions upon voting or candidacy in state elections. From these he invites us to fashion, as no other court has yet done, a fundamental right of all students to run for elective

See *Weise, supra* at 407 (listing "five factors to be weighed in considering state action claims"); *Perez v. Sugarman,* 499 F.2d 761, 765 (2d Cir. 1974) (private child-rearing institutions found to be state actors); *McCabe v. Nassau County Medical Center,* 453 F.2d 698, 703 (2d Cir. 1971) (partly private, partly public hospital). Cf. *Parish v. National Collegiate Athletic Ass'n,* 506 F.2d 1028, 1031 & n.7 (5th Cir. 1975) (promulgation and enforcement of rules of athletic eligibility by association, half of whose members are private institutions, constitutes state action).
The institution involved here is fully public in every respect; thus, state action is clearly present. See, e. g., *Bellnier v. Lund,* 438 F.Supp. 47, 51 (N.D.N.Y.1977) (citing cases). Although two judges in one circuit refused to find state action in circumstances comparable to those present in this case, see *Palacios v. Foltz,* 441 F.2d 1196 (10th Cir. 1971), the

weight of authority has rejected that view. See *Bellnier, supra* at 51.

**11.** Plaintiff has alleged claims under both the Civil Rights Statute, 42 U.S.C. § 1983, and directly under the federal constitution. In order to state a cause of action under § 1983, the plaintiff must allege a deprivation perpetrated "under color of state law." This requirement is equivalent to the fourteenth amendment's requirement of state action. See, e. g., *United States v. Price,* 383 U.S. 787, 794 n.7, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966); *Perez v. Sugarman,* 499 F.2d 761, 764 (2d Cir. 1974).

**12.** See, e. g., *San Antonio School District v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 1288, 36 L.Ed.2d 16 (1973).

**13.** *Id.*

student office free from any qualifying restrictions. Whatever may be said of the importance of this putative "right," it is not of the same character or caliber as those that have already been deemed "fundamental" for constitutional purposes.[14] If education itself is not a "fundamental" right "explicitly or implicitly guaranteed by the Constitution,"[15] a fortiori there is no fundamental right to participate in the processes of its creature student government.[16]

■ Even though the challenged policies neither impinge upon a suspect class nor infringe a fundamental right, nevertheless they must be reasonable to be valid. The regulations here at issue clearly are so; they establish neutral criteria that further legitimate interests. The fundamental purpose of Baruch College is to educate students. Participation in student government is known to be a demanding and time-consuming activity that those interested in the progress and welfare of the students might reasonably conclude is detrimental to the academic progress of students whose grades are only barely above the passing rate. Just as the college has an interest in inspiring weaker students to succeed in their studies, the general student population,

which ratified the student constitution and whose money is spent by the student government, has a legitimate interest in insuring that candidates for an office which demands time and attention be limited to those capable of discharging their duties without risk of academic failure or at least of impairing their academic standing. In addition, they have an interest in limiting elective positions to those whose ties to the school demonstrate a sufficient degree of commitment to and participation in school affairs. It is not unreasonable for students to assume that those of their number taking less than the full course load as a group will lack the requisite time for and interest in campus activities, and that they will be unable adequately to understand and represent the interests of full-time students.

■ In short, the regulations at issue here serve legitimate ends. Their obvious purpose is not to penalize a group of students but to direct their energies to academic studies, and in the process, to insure that those who govern the student body are not forced into early resignation by academic failure. The regulations demarcate a rough category of people thought to have sufficient time, interest and ability to par-

14. These rights include "the 'basic civil rights of man,' fundamental to our very existence and survival," *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 1824, 18 L.Ed.2d 1010 (1967) (quoting *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942)), such as: the right to marry, *Loving, supra*; to procreate, *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); to travel, *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); and to educate one's offspring in the tenets of his faith, *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). *See also Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Although there is a "right, implicit in our constitutional system, to participate in state elections on an equal basis with other qualified voters whenever the State has adopted an elective process for determining who will represent any segment of the State's population," *San Antonio School District v. Rodriguez*, 411 U.S. 1, 35 n.78, 93 S.Ct. 1278, 1298 n.78, 36 L.Ed.2d 16 (1973); that equal right to vote "is not absolute" but is subject to the state's power to impose qualifications and to regulate the franchise in other ways, *Dunn v. Blumstein*,

405 U.S. 330, 336, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Thus "the right to vote, *per se*, is not a constitutionally protected right." *San Antonio School District, supra*, 411 U.S. at 34 n.78, 93 S.Ct. at 1298 n.78. It is almost too obvious to add that if there is no absolute right to vote in state elections, there cannot be one for student elections. Moreover, the plaintiff here has been accorded equal treatment with all others similarly situated; the electoral qualifications at issue here are facially neutral, and in the absence of a claim to the contrary, it may be assumed that they were applied evenhandedly.

15. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 33–34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973).

16. *Cf. Mitchell v. Louisiana High School Athletic Ass'n*, 430 F.2d 1155, 1157 (5th Cir. 1970) (no constitutionally protected right to participate in interscholastic athletics); *Parish v. National Collegiate Athletic Ass'n*, 361 F.Supp. 1220, 1228 (W.D.La.1973), *aff'd*, 506 F.2d 1028, 1033 (5th Cir. 1975).

ticipate and serve in the student government. That the line drawn is an imprecise one does not undermine the constitutional validity of the regulation.[17] As did the New York Supreme Court,[18] we conclude that these regulations, viewed as a whole, are fair and reasonable attempts to achieve legitimate purposes.

Finally, the plaintiff has utterly failed to establish any injury to his expressive rights. Indeed, when pressed at oral argument, counsel admitted that the challenged regulations do not in any way prevent the plaintiff from speaking in favor of any program or advocating any point of view. He is free to advocate the elimination of the present qualification for office. Thus, none of those cases in which courts have struck down campus restrictions on student expression is applicable here.[19]

The motion of the defendants for summary judgment is hereby granted.

So ordered.

---

17. *San Antonio School District v. Rodriguez,* 411 U.S. 1, 50–51, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973); *Dandridge v. Williams,* 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

18. Before commencing this action, the plaintiff brought an Article 78 proceeding, *see* N.Y.C.P. L.R. §§ 7801–06 (McKinney's 1963), in the Supreme Court of New York County, in which he raised, under the New York State Constitution, claims virtually identical with those now before this Court. In an unpublished opinion Judge Mercorella held that the same two requirements here contested were "not arbitrary and capricious. . . ." *Sellman v. Baruch College of the City of New York,* No. 08313/79, slip op. at 4 (N.Y.Sup.Ct. May 16, 1979). Because federal issues were neither litigated nor determined in that proceeding, the state court's ruling is not *res judicata* on the issues now before this Court. *See, e. g., Winters v. Lavine,* 574 F.2d 46 (2d Cir. 1978) (citing cases); *Lombard v. Board of Educ.,* 502 F.2d 631 (2d Cir. 1974), *cert. denied,* 420 U.S. 976, 95 S.Ct. 1400, 43 L.Ed.2d 656 (1975). Nevertheless, we find Judge Mercorella's reasoning persuasive.

19. *See, e. g., Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972); *Tinker v. Des Moines Independent School Dist.,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969).