**Tim BULL, By His Next Friend Phyllis BULL, Plaintiff,**

v.

**The DARDANELLE PUBLIC SCHOOL DISTRICT #15 and Matt Gregory, By His Next Friend Debra Woods, Defendants.**

**Civ. No. LR–C–90–521.**

United States District Court,
E.D. Arkansas, W.D.

Sept. 5, 1990.

James S. Dunham, Peel & Eddy, Russellville, Ark., for plaintiffs.

Timothy W. Murdoch, Laws, Swain & Murdoch, P.A., Russellville, Ark., for Dardanelle Public School Dist.

Jonathan P. Shermer, Jr., Russellville, Ark., for Matt Gregory.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

This proceeding was instituted under the Civil Rights Act, Title 42 U.S.C. § 1983, with jurisdiction based on Title 28 U.S.C. § 1343. Plaintiff seeks the following relief:

(1) An order from this Court directing the Dardanelle Public School District (School District or District) to vacate and set aside the Dardanelle High School Student Council presidential election conducted on April 19, 1990, resulting in defendant Matt Gregory being declared president of

the student counsel for the 1990–91 school term.

(2) An order directing the School District to officially declare and install plaintiff as president of the Dardanelle High School Student Counsel for the 1990–91 school term.

(3) Enjoining the School District from enforcing or implementing a by-law of the Dardanelle High School Student Council that provides:

All students wishing to run for office must have two-thirds of their current teachers sign their approval for a student's [filing] for office.

## RELEVANT FACTS

In the spring of 1990, plaintiff Tim Bull decided to run for president of the Dardanelle High School Student Council for the 1990–91 school year. Plaintiff, a junior at the time, was an honor student, maintaining a 3.40 grade point average. He is active in school activities, and was president of the junior class as well as the junior class representative on the student council.

The By–Laws of the Dardanelle High School Student Council approved by the student body and in effect at the time of the election at issued provided that a candidate for student council must meet the following requirements:

I. All students wishing to run for office must have two-thirds of their current teachers sign their approval on a student's [filing] for office letter.

II. All students wishing to file for candidacy must have an accumulative gradepoint of 2.75, except for class representatives who must have an accumulative gradepoint of 2.50.

III. Any student wishing to file for candidacy must have been enrolled for the entire school year.

IV. All presidential and vice-presidential candidates must present a speech of no longer than five minutes and no less than two minutes in length.[1]

Prospective candidates were given an application form with instructions for the candidates to fill in their class schedule and return the form to the student council faculty advisors. The teachers were then given the application with the following written instructions:

The following student wishes to apply as a candidate for Student Council for 1990–91. In the schedule that follows please register a "no" response if this candidate should not be allowed to run because of lack of cooperation, rude conduct in class, excessive absences or tardies, lack of responsibility, or inappropriate behavior in or out of school.

Four of plaintiff's seven teachers disapproved of his candidacy. Plaintiff's appli-

1. In response to the controversy surrounding the student council election at issue here, the student council on April 18, 1990, sought to amend the constitution to allow write-ins. The school principal exercised her veto power and refused to approve the "write in" amendment. However, at the suggestion of the. Superintendent, the By–Laws of the Student Council Constitution were amended at the end of the school year to contain the following changes:

A faculty member shall base his recommendation or lack of recommendation for a candidate on the following criteria:
1. Demonstration of positive leadership in all circumstances known to the faculty member.
2. Demonstration of responsibility discharged in the faculty member's acquaintance with the candidate.
3. Enthusiasm of the candidate for student and school welfare.

4. Character demonstrated to the faculty member by the candidate to include honesty, integrity, fairness, adherence to school rules, and concern for others.
A student failing to obtain the required two-thirds recommendation of current teachers may, before the filing deadline, appeal in the following manner:
1. Present a verbal or written appeal to all faculty in whose class he has been enrolled at DHS (a rising ninth grader may appeal to all faculty in whose class he was enrolled as a seventh grader and to current teachers) and to members of the current DHS Student Council.
2. Obtain a two-third's recommendation of this assembly when voting is done by secret ballot.
A candidate for office obtaining a two-third's vote after appeal may then file and run for his position.

cation contained the following rating and remarks by plaintiff's teachers:

Al Drittler (Algebra II)—Disapprove—"Lack of Responsibility"

Gabriel Gillette (Chemistry)—Disapprove—"Forget It"

D. Gleason (Leadership)—Disapprove—"Demonstrated lack of maturity and responsibility"

K. Fudge (English)—Approve—"Great turn around!"

A. Collins (History)—Disapprove—"Lack of Responsibility"

Tucker (Football)—Approve

In all other respects, plaintiff was eligible to run for president.

Plaintiff was informed that he did not qualify to run for student council president. He met with the principal and faculty, where the teachers attempted to explain the reasons for their vote. Plaintiff also submitted a written grievance to the principal. The principal did not take any action. Plaintiff tried to take the matter to the Dardanelle School Board, but the members would not call a board meeting before the school election.

Another student, Scott Randall, also did not receive approval from two-thirds of his teachers to run for vice-president of student council. Plaintiff and Randall proceeded to organize a write-in campaign. Plaintiff announced the write-in campaign in the school cafeteria. As part of his campaign strategy, plaintiff put up solid black poster boards around the school, and plaintiff and his supporters wore black ribbons and black clothing.

Plaintiff did not seek permission to run the write-in campaign. Plaintiff was not disciplined or prevented from engaging in his unofficial campaign.

On April 19, 1990, a school assembly was held at which the candidates whose names were on the ballot were allowed to address the student body. Two students, Matt Gregory and Anita Passmore, had met all the qualifications to run for president. After they spoke, the then-current student council president announced that any write-in votes would not be counted as they were not provided for in the constitution and by-laws.

Before the assembly came to an end, plaintiff and Randall "took the floor" and plaintiff proceeded to address the students. Plaintiff and Randall were not officially on the program, nor did they have permission to speak. Nevertheless, no one attempted to stop them. Plaintiff urged students to write-in his name for the position of president and that of Randall for vice-president, and told the students that the Superintendent of the School District had informed him that write-in votes would be counted. Plaintiff stated that a vote for him and his companion would be a vote for a "student council" while a vote for the other candidates would be a vote for a "teachers' council."

The election was held on April 19. All the ballots were tallied, however, none of the write-in ballots were counted for purposes of determining the winner.[2] According to the testimony, plaintiff received the most number of votes for president. However, of the "official" candidates for president, Matt Gregory won and was installed as president of the student council.

## DISCUSSION

Plaintiff contends that the by-law or policy requiring teacher approval violates his right to substantive due process in that the provision contains no guideline to "control the exercise of power" by defendant school district; that, as such, the provision is invalid on its face because it is vague.[3]

---

**2.** The evidence reflects that two faculty members and a group of students served as election clerks and were told to count all the votes, but not to consider the write-in votes in determining the outcome of the election. One of the faculty members, Ms. Gleason, testified that all votes were counted to ensure the validity and accuracy of the election, that is to make sure the number of votes cast matched the number of registered voters.

**3.** As previously noted, the form that a prospective candidate for the student council submits to his teachers to register their approval or disapproval contains, among other items, the following criteria: "lack of responsibility, or inappropriate behavior in or out of school."

Plaintiff further asserts that aside from permitting arbitrary and capricious action, the provisions have no rational relation to any legitimate exercise of authority by the school district.

Plaintiff further asserts that the school policy violates the Equal Protection Clause in that it creates two classes of students, those who are allowed to run for office and those who are not. Plaintiff also contends that the policy and actions of defendant discriminate between two classes of students who run for office—those whose votes are counted because they are officially on the ballot and those who run but whose votes are not counted—and that the classifications bear no rational relation to any legitimate function of the school district.

Additionally, plaintiff asserts that the withholding of approval by the teachers was in retaliation for plaintiff's exercise of his First Amendment rights. He further contends that the policy has a chilling effect on the exercise of First Amendment rights of all students.

The School District argues that its actions were not under color of law. The School District states that the constitution and by-laws establishing the qualifications were drafted and prepared by the students in 1986. The constitution and by-laws were approved by the student body. The District relies on *Palacios v. Foltz*, 441 F.2d 1196 (10th Cir.1971).

■ The Court notes that the reasoning in *Palacios* has been rejected by other courts. *See Sellman v. Baruch College of the City University of New York*, 482 F.Supp. 475, 479 n. 10 (S.D.N.Y.1979). The Court finds that state action exists in this instance. Here, the school officials have the power to overrule any decision by the student council. Two faculty representatives serve as advisors, with authority to approve or overrule the actions of the student council. The teachers approve or disapprove of a student's candidacy for stu-

dent council. The student council was not free from the School District's control. The student council election was held on school ground during school hours. The faculty sponsors were present during the counting of the ballots and the ballots were placed in the school vault. It is plain that the School District, through its faculty and administrators, was a central figure, if not indeed paramount, in the election process, and that the student council was not free from the School District's control. *See Gay and Lesbian Students Association v. Gohn*, 850 F.2d 361, 366 (8th Cir.1988). Plaintiff has demonstrated the existence of state action.

Students in school, as well as out of school, enjoy, under the federal constitution, basic and fundamental constitutional rights, but this is not a license for individual students to disrupt the educational process to articulate any grievances. In other words, "students do not shed their constitutional rights at the schoolhouse gate." *Tinker v. Des Moines Indep. Community School Dist.*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Nevertheless, "the constitutional rights of students are not automatically coextensive with the rights of adults in other settings." *Bethel School District No. 403 v. Fraser*, 478 U.S. 675, 682, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549 (1986).

Plaintiff claims that he is "outspoken" at school and that the teachers would not approve his candidacy for president because of his "outspokenness" and his expression of opinions at odds with those of the faculty. The evidence supports the general characterization of plaintiff as outspoken although it is somewhat unclear as to what issues plaintiff expressed strong views. Plaintiff points to a major dispute in student council over whether to pave the parking lot in order to provide additional parking space for students or buy a juke box for the school cafeteria. Plaintiff was the leading proponent of the juke box. He also claims to be particularly outspoken in

While plaintiff's complaint does not expressly refer to these criteria as guidelines or challenge the constitutionality of these factors, the Court is persuaded that plaintiff's complaint should be amended to conform to the proof since it is clear that evidence was offered and received, without objection, regarding the purported vagueness of the criteria.

Leadership class, and that his greatest conflict was with Ms. Gleason, his Leadership teacher and one of the faculty advisors of student council.

Assuming plaintiff's speech is protected by the First Amendment, the Court is not persuaded that the teachers disapproved of plaintiff because of his outspoken views on important matters. Ms. Gleason, plaintiff's teacher, testified that she voted "no" because plaintiff demonstrated lack of maturity and responsibility. She based that opinion on her interactions with plaintiff on student council, in Leadership class, and as junior class faculty representative.

Ms. Gleason pointed to specific incidents to support her vote. She noted that plaintiff failed to take an active role in planning for the prom when he was junior class president. She believed that plaintiff did not pay attention in student council meetings, and failed to stay focused on the agenda. She stated that plaintiff was disruptive during meetings, thereby causing the meetings to be less efficient, and that plaintiff demonstrated a lack of responsibility with respect to his student council duties. As examples, she noted that plaintiff failed to obtain information from the junior class for Food Service and failed to write a thank-you note for which he had volunteered.

Ms. Gleason stated that she encouraged students to express their opinions in Leadership class. She claimed, however, that plaintiff would not stay focused on the issue under discussion.

The Court notes from scrutinizing the Constitution of the Student Council that some of the basic and fundamental reasons for establishing the Student Council are:

1. To provide a training ground in democratic involvement and civic participation for all students;

2. To serve as a role model for the student body; and,

3. To further communication between students and school administration.

This Court is persuaded that Ms. Gleason, as well as the other teachers who did not endorse plaintiff's candidacy, were earnestly and sincerely endeavoring to foster and implement the overall objectives and reasons for establishing the Student Council as opposed to any desire to retaliate against plaintiff for any First Amendment activities. In other words, plaintiff's behavior in class, particularly his failure to complete assignments, his talkativeness in class, failure to pay attention in class, was not consistent with the overall objective of providing a training ground in democratic involvement, to further good relations between faculty and students, and as a role model for the entire student body.

It is plain that plaintiff is a good student academically, an honor student with a 3.40 grade point average, but it must be remembered that life, and indeed success, as we cherish them in our society embraces other components equally as important, for example, respect for the rights and views of others, common sense, practicality and level headedness.

Thus, the actions of the teachers in not approving of plaintiff's candidacy were related to "legitimate pedagogical concerns". *Hazelwood School District v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 571, 98 L.Ed.2d 592 (1988). In a case somewhat similar to this, the Sixth Circuit wisely stated:

> "[S]chools must teach by example the shared values of a civilized social order." ... Sometimes, of course, these "shared values" come in conflict with one another; independence of thought and frankness of expression occupy a high place on our scale of values, or ought to, but so too do discipline, courtesy, and respect for authority. Judgment on how best to balance such values may well vary from school to school.

.        .        .        .        .

> Local school officials, better attuned than we to the concerns of the parents/taxpayers who employ them, must obviously be accorded wide latitude in choosing which pedagogical values to emphasize, and in choosing the means through which those values are to be promoted. We may disagree with the choices, but unless they are beyond the

constitutional pale we have no warrant to interfere with them. Local control over the public school, after all, is one of this nation's most deeply rooted and cherished traditions.

*Poling v. Murphy,* 872 F.2d 757, 762–63 (6th Cir.1989).

"The undoubted freedom to advocate unpopular and controversial views in schools and classrooms must be balanced against the society's countervailing interest in teaching students the boundaries of socially appropriate behavior." *Bethel School District No. 403,* 106 S.Ct. at 3163. The Court finds that to the extent any of the teachers' actions were based on plaintiff's outspoken behavior, the teachers properly balanced the interests involved and acted appropriately.

Accordingly, the Court finds that plaintiff's First Amendment rights were not violated.

■■■ Plaintiff does not have a constitutional right to run for high school student council. *See Poling v. Murphy,* 872 F.2d 757, 764 (6th Cir.1989); *Sellman v. Baruch College of City University of New York,* 482 F.Supp. 475, 480 (S.D.N.Y.1979). While plaintiff has no right or property interest in participation in student council, the challenged policy cannot impinge on a fundamental right, provide opportunities other than on a fair and equal basis, or extend or withdraw the privilege to participate arbitrarily. 2 Rapp, *Education Law* § 8.07[2][a], 1990.

■■■ Plaintiff argues that the policy has a chilling effect on a student's First Amendment rights. The Court cannot find that the policy in any way burdens plaintiff's First Amendment rights or the rights of any student. Indeed, plaintiff was given free rein to exercise his First Amendment rights during the election. He was allowed to protest the fact that he was deemed "unqualified" to run for office. He was not prohibited from launching a "protest" campaign, complete with black posters, black dress, and black ribbons. He was not deterred from "seizing the floor" to give an election speech, despite the fact that he was not an official candidate. The tolerance of the faculty and administration to plaintiff's campaigning further supports this Court's conclusion that the teachers did not retaliate against plaintiff for being outspoken. The testimony also supports that students were encouraged to voice their opinions, particularly in Leadership class.

■■■ "Regardless of whether a statute impinges on other constitutional rights, due process requires it to give adequate notice of what conduct is prohibited and sufficient guidelines to prevent arbitrary and discriminatory enforcement." *IDK, Inc. v. Clark County,* 836 F.2d 1185, 1197–98 (9th Cir. 1988). The testimony reveals that both students and teachers understood the meaning of the criteria the teachers used for deciding whether to approve a student's candidacy. Even plaintiff understood that failure to complete assignments could be considered "lack of responsibility." The policy does not grant unfettered discretion to teachers as plaintiff argues; the policy identifies six criteria to be used in considering the appropriateness of a student's candidacy. The same specificity required in criminal statutes is not required in high school regulations where greater flexibility by administrators and teachers is permitted. *Bethel School District No. 403 v. Fraser,* 106 S.Ct. at 3166.[4]

Furthermore, the policy serves legitimate ends. Members of the student council developed the criteria based on what characteristics they thought would be unfitting of a council member. The students were concerned with ensuring that qualified, responsible students were elected to the student

---

4. The Court does have some concern with the use of the criterion "inappropriate behavior in and out of school." Seemingly, such language could be considered vague and might foster arbitrary action by a teacher. The Court, however, is persuaded that objective or specific and concrete reasons existed for disapproving of plaintiff's candidacy and that the teachers did not act arbitrarily and capriciously. In any event, whether the policy should be enjoined because of the possible vagueness of this criterion is now moot as all the criteria have changed. *See* Footnote 1 *supra.*

council and they wanted to avoid popularity contests or making the election a farce. The students felt teacher input was important because teachers are in a position to judge students. The Court cannot say that the policy requiring two-thirds of a student's teachers to approve his or her candidacy based on specific criteria is an arbitrary or unreasonable means to attain the legitimate end of having a student council which carries out the purposes of the student council.[5] Moreover, in order to challenge a regulation or policy for vagueness, plaintiff must demonstrate the policy is vague as applied to his conduct. *Aiello v. City of Wilmington*, 623 F.2d 845 (3rd Cir.1980); *U.S. v. McKinnon Bridge Co., Inc.*, 514 F.Supp. 546 (M.D.Tenn.1981). Nor is a policy void for vagueness if the terms of the policy can be determined by referring to other definable sources. 16C C.J.S. Constitutional Law § 974 (1985) at 284.

Thus, the Court concludes that the policy is a fair and reasonable attempt to achieve legitimate purposes, and that plaintiff's substantive due process rights were not violated. The Court further finds that plaintiff's rights to equal protection were not violated. Finally, the Court finds that the actions of the teachers were not taken in retaliation of plaintiff's exercise of his First Amendment rights.

In sum, the Court finds that plaintiff's constitutional rights were not violated and the complaint is hereby dismissed.

IT IS SO ORDERED this 5th day of September, 1990.

---

**5.** The Constitution of the Dardanelle High School Student Council lists as its purposes:
 1) To plan and provide a variety of school activities;
 2) To further communication between students and school administration;
 3) To serve as a role model for the student body;
 4) To maintain and improve the appearance of the campus;

 5) To maintain and promote school spirit;
 6) To help student feel welcome;
 7) To improve the attendance of the student body; and
 8) To provide a training ground in democratic involvement and civic participation for all students.