Sarah **HUSAIN**, Devon Blinth, Colleen McGraham, Jeff McGraham, Kathleen McHugh, Marc J. Peseau, Kasadore Ramkisson, Neil Schuldiner, William Wharton, and Manjula Wijerama, Plaintiffs,

v.

Marlene **SPRINGER**, Carol Jackson, Kathleen Galvez, Marla Brinson, Michael Silva, Winsome Alston, Sibi Geevarghese, Joseph Canale, Juergen Schnetzer, Andre Woods, Charlo Almeda, Christopher Alvarez, Kellyanne Biesty, Mary Anne Christensen, Luis Cruzatte, W. Ann Reynolds, Robert E. Diaz, Roy Moskowitz, Michael Solomon, the City University of New York, the College of Staten Island, the Student Election Review Committee of the College of Staten Island, the Board of Trustees of the City University of New York, and Matthew Goldstein, Defendants.

No. 97CV2982(NG).

United States District Court,
D. New York.

March 28, 2002.

Ronald B. McGuire, Esq. Jersey City, NJ, for plaintiff.

Pro Se (Joseph Canale, Juergen Schnetzer, Andre Wood, Christopher Alvarez), Jane Sovern, Esq. New York, Steven Banks, Esq. New York, for defendant.

## *ORDER*

GERSHON, District Judge.

Before the court are three motions, two of which were referred to Magistrate Judge Cheryl Pollak, and one of which was heard directly by this court.

## I. OBJECTIONS TO JUDGE POL-LAK'S REPORT AND RECOM-MENDATION

Defendants City University of New York ("CUNY"), the College of Staten Island ("CSI"), the Board of Trustees of CUNY, The Student Election Review Committee ("SERC"), and the individually named members of the CSI and CUNY administrations [1] (collectively, the "CUNY defendants") move for an order pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) dismissing plaintiffs' claims. Plaintiffs, in turn, move for an order pursuant to Fed. R.Civ.P. 56 granting summary judgment as to CSI President Marlene Springer. These motions were referred to Judge Pollak, who issued a Report and Recommendation ("RR") on May 1, 2001, to which both plaintiffs and defendants have filed objections. I have therefore reviewed their objections under the *de novo* standard of review. Fed.R.Civ.P. 72(b).

Judge Pollak provides a detailed description of the facts of this case in her Report and Recommendation on these motions dated May 1, 2001. The heart of this case is the decision to postpone a student government election at CSI in the spring of 1997. The Student Election Review Committee ("SERC") made the initial decision to postpone the election on May 1, 1997, after receiving a complaint that the *College Voice,* a student newspaper that was funded in part by mandatory student fees, had run an issue that contained two pages of platform statements by candidates running on the opposition Student Union slate and an endorsement on the front page encouraging readers to "Vote Student Union!"

Following the SERC's decision, the polls were closed while plaintiffs and other Student Union candidates appealed the decision to CSI President Marlene Springer, who reopened the polls later that day, but reserved the final decision on the validity of the election until after the completion of voting. On May 6, 1997, President Springer affirmed the SERC's decision nullifying the election and scheduled a new election. She explained her decision as follows:

> The *College Voice* inappropriately used student activity fee funds to publish and distribute approximately five thousand copies of a twenty-eight page issue of the *College Voice* with a cover boldly encouraging a vote for a particular slate of candidates, some of whom are also staff members of the *College Voice.* Moreover, much of the issue was substantially devoted to supporting the endorsed slate of candidates. I find that this issue amounted to a thinly veiled student activity fee funded piece of campaign literature for the Student Union slate. As a result, the electoral process was compromised beyond its ability to be fair to all candidates, as argued by other candidates who requested nullification of the election.

---

1. These are defendant officers or employees of CSI, Marlene Springer, Carol Jackson, Kathleen Galvez, Marla Brinson, Michael Silva, Winsome Alston, and Sibi Geevarghese, and officers or employees of CUNY, W. Ann Reynolds, Robert E. Diaz, Roy Moskowitz, Michael Solomon, and Matthew Goldstein.

The April 30th to May 3rd election is therefore declared null and void, and a new election shall be scheduled for the period Thursday May 8th, 1997 through Friday, May 16, 1997.

The Student Union candidates won all 37 races at both the canceled election and the rescheduled election.

### First Amendment Claim

■ In her Report and Recommendation Judge Pollak correctly defines the issue as whether President Springer's decision was a constitutionally permissible content-based determination designed to confine the speech in the student newspaper within the scope of a limited public forum or whether it was a decision based on impermissible viewpoint discrimination. Judge Pollak found that there is a genuine issue as to "whether President Springer's decision was a legitimate exercise of the right of the university to regulate speech within the limited public forum, or whether her decision was based on the views expressed by the College Voice." RR 27. I agree with Judge Pollak.

I further agree with Judge Pollak's analysis as to why plaintiffs' motion for summary judgment against President Springer on this claim should be denied. Plaintiffs, in that motion, limit their argument to a claim that the mere review by President Springer of the *College Voice* issue in question violated their First Amendment rights. For the reasons stated by Judge Pollak, this argument does not entitle plaintiffs to relief. As Judge Pollak stated:

the fact that President Springer had to review the content of the newspaper in order to determine that it constituted campaign literature is not the controlling question presented here. *Rosenberger v. Rector and Visitors of the University of Virginia* made it clear that, in the context of a limited public forum, the State may engage in content discrimination in order to preserve the purposes of the limited public forum, and in doing so, may not only exclude certain groups from participating in the forum, but may also exclude the discussion of certain topics. 515 U.S. 819, 829–30, 115 S.Ct. 2510, 132 L.Ed.2d 700 (1995). By necessity, the State must review the content of the speech to determine whether it is the type of speech that fits within the topics or categories of speech for which the limited public forum was established. *Cf. Hill v. Colorado,* 530 U.S. 703, 120 S.Ct. 2480, 2492, 147 L.Ed.2d 597 (2000) (noting that the Court has "never held, or suggested, that it is improper" to review the content of speech to determine whether it is prohibited by a particular rule or regulation).

RR 26–27.

Given that the First Amendment claim is viable, that summary judgment cannot be granted to the plaintiffs, and that resolution of the claim must await further discovery, there is no need to further address certain disputes which plaintiffs have with Judge Pollak's particular analysis of First Amendment law in the Report and Recommendation. Similarly, disputes between the parties and with the conclusions of the Report and Recommendation regarding the significance of the 1997 SERC Rule relating to elections need not be resolved at this time. Suffice to say that plaintiffs state a claim and that the limited ground upon which plaintiffs seek summary judgment is insufficient to warrant relief.

■ I do, however, address the Supreme Court's decision in *Good News Club v. Milford Central School,* 533 U.S. 98, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001), decided after issuance of the Report and Recommendation, because plaintiffs argue that it casts doubt on the analysis used by Judge Pollak in rejecting their motion for summary judgment. Plaintiffs' reading of

*Good News Club* is incorrect. Under plaintiffs' analysis of the case, any review of the content of a school newspaper by the school administration necessarily establishes viewpoint discrimination. However, the holding of *Good News Club* is not this broad. In *Good News Club,* a public school that opened its facilities to community groups, including groups that promote moral and character development of children, refused to allow a Christian group that promotes moral and character development to use the school facilities. The Supreme Court "reaffirmed our holdings in *Lamb's Chapel* [*v. Center Moriches Union Free School Dist.,* 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993) ], and *Rosenberger* [, 515 U.S. at 819, 115 S.Ct. at 2510] that speech discussing *otherwise permissible subjects* cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint." *Id.* at 110–111, 121 S.Ct. 2093 (emphasis added). *Good News Club* does not mean that every decision made by a school official regarding expressive activity is subject to attack as viewpoint discrimination. Rather, it remains the law after *Good News Club* that the "State may be justified 'in reserving [its forum] for certain groups or for the discussion of certain topics.' *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 829, 115 S.Ct. 2510, 132 L.Ed.2d 700 . . . (1995)." *Id.* at 106, 121 S.Ct. 2093.

## Eleventh Amendment Immunity for CUNY, CSI, and the CUNY Board of Trustees

Plaintiffs do not oppose dismissal of all federal claims for damages against CUNY, CSI and the CUNY Board of Trustees. In addition, all claims for damages against Matthew Goldstein, identified in the complaint as the current CUNY chancellor and CEO of CUNY, and sued only in his official capacity, are dismissed under the Eleventh Amendment.

Also, as recommended by the Report and Recommendation (and apparently not the subject of dispute), the claims for money damages against CUNY individual defendants Springer, Jackson, Silva and Brinson in their official capacities are dismissed under the Eleventh Amendment.

■ However, plaintiffs object to the Report and Recommendation's conclusion that the State law claims against CUNY, CSI, and the CUNY Board of Trustees should be dismissed under the Eleventh Amendment. It is undisputed that CSI is a senior college. For the reasons stated by Judge Pollak, *see* RR 36–41, I agree that the Eleventh Amendment bars these claims. *See Hester–Bey v. New York City Technical College,* 2000 WL 488484 *2 (E.D.N.Y.2000) (holding that, under *Pikulin v. City University of New York,* 176 F.3d 598, 599–600 (2d Cir.1999), CUNY senior colleges are arms of the State for Eleventh Amendment immunity purposes); *Salerno v. City University of New York,* 2000 WL 1277324 *3 (S.D.N.Y.2000) (same); *Becker v. City University of New York,* 94 F.Supp.2d 487, 490 (S.D.N.Y. 2000) (same).

■ Plaintiffs, citing to *National Foods, Inc. v. Rubin,* 936 F.2d 656 (2d Cir.1991), argue that the State has waived sovereign immunity for claims brought under the New York State Open Meetings Law, N.Y. Public Officers Law § 100–111 ("OML"), because N.Y. Public Officers Law § 107[1] "does not require that an action to enforce the OML be brought in a specific court." Plaintiffs' Objections to RR 52. However, a State does not waive sovereign immunity merely by failing to specify what court a statute may be enforced in. As the Court of Appeals for the Second Circuit held in *National Foods, Inc.:*

A federal court will find that that immunity has been waived only where stated by the most express language or by such

overwhelming implications from the text as will leave no room for any other reasonable construction. Not only must the state be found clearly to have subjected itself to suit, but it must also be found to have subjected itself to suit in *federal court.*

936 F.2d at 659 (emphasis in original) (citation and quotation omitted). Unlike in *National Foods, Inc.,* which held that the State had waived sovereign immunity against suits for reasonable attorney's fees where the statute at issue required the State to provide legal defense for employees against actions in federal or state court and permitted "the court" to resolve disputes over attorney's fees, the OML does not mention enforcement in federal court, and the only reasonable construction from the overwhelming implications of the text is that the State did not waive sovereign immunity.

### Eleventh Amendment Immunity for SERC

■ According to the complaint, SERC is a committee chaired by a CSI Administrator (defendant Silva) and established pursuant to Article 15.2(d) of the bylaws of the CUNY Board of Trustees to supervise student elections and adjudicate disputes and complaints in student elections. Third Amended Complaint ¶ 32. Under CUNY Bylaw 15.2(d), "[e]ach college shall establish a student elections review committee in consultation with the various student governments. The student elections review committee shall approve the election procedures and certify the results of elections for student governments, and student body referenda." As a creature of CSI, which is entitled to sovereign immunity as a CUNY Senior College, I therefore find that, as a matter of law, SERC is also entitled to sovereign immunity protection from a suit for damages because the real party in interest is the State. *See Thaler v. Casella,* 960 F.Supp. 691, 700 (S.D.N.Y.

1997) (holding that a grievance committee is entitled to Eleventh Amendment immunity because, since it is "part of the judicial arm of the state of New York," the State is the real party in interest); *Salerno,* 2000 WL 1277324 *3 (holding that the Calandra Institute, a research center affiliated with CUNY, is entitled to Eleventh Amendment immunity because it is "under the control" of CUNY).

### Injunctive and Declaratory Relief

■ The issue of mootness affects the subject matter jurisdiction of the court and therefore may be addressed at any time. Judge Pollak appropriately raised the issue for the court's consideration, even though the CUNY defendants had not initially raised the issue in their motion to dismiss. All parties have now had a full opportunity to address the issue. Based upon my *de novo* review of the issue, I find that all claims for injunctive and declaratory relief based upon the Spring 1997 election are moot.

In an Order of March 23, 2000, denying plaintiffs' motion for a preliminary injunction. I stated my understanding, based upon representations from the CUNY defendants, that the rule applicable in the 1997 election that stated that "Publications funded by Student Activity Fee (sic) cannot be used as campaign flyers or posters during the student elections and cannot be used as a means to distribute campaign flyers or posters" has been repealed, and

> further it is agreed that defendants will not change the Rules governing the Spring 2000 Student Elections at the College of Staten Island prior to the resolution of litigation in this case or, in fact, during the duration of President Springer's administration, nor will defendants cancel any election in response to endorsements or opinions on elections published in student newspapers. In

sum, defendants have agreed that they will not prohibit any College of Staten Island student activity fee-funded publications from being used as campaign flyers and posters.

Although Judge Pollak noted that this commitment does not extend "indefinitely into the future," RR 57, and plaintiffs argue that there is a possibility that CSI may change its policy after President Springer leaves office, "some reason must support Plaintiffs' insistence that the alleged violation is likely to recur. Defendants' burden concerning the unlikelihood of recurrence is a heavy one, but it by no means requires proof approaching metaphysical certitude." *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1524–25 (10th Cir.1992) (holding that a First Amendment challenge to a university's policy governing what films may be screened on campus was moot because the university had met its burden of establishing no reasonable expectation of the wrong's recurrence by changing its policy to comply with the plaintiffs' demands, and that the mere suggestions by plaintiffs that the university could abandon or rescind the policy at some point in the future was insufficient to establish that a violation is likely to recur). By agreeing not to reinstate the challenged rule or engage in the challenged behavior, defendants have met their burden of showing that the alleged violation is unlikely to recur, and plaintiffs have offered nothing to contradict this showing.

As Judge Pollak found, plaintiffs cannot establish that this case falls within the exception for cases which are likely to recur but evade review. *See* RR 56 n. 29. Nothing in plaintiffs' objections provides anything but conclusory and speculative arguments to the contrary.

**Claims against Chancellor Reynolds; Vice President for Student Affairs Jackson; Chairperson of SERC Silva; the SERC Member Defendants (Alston and Geevarghese); and the Attorney Defendants (Diaz, Moskowitz, Solomon and Galvez)**

For the reasons set forth by Judge Pollak, all claims against each of these defendants, except Chairperson Silva and Vice President Jackson, will be dismissed.

**The Fall 1997 Election (Fourth Cause of Action)**

In the fall of 1997 SERC ordered a student election (not the same election which is the subject of the other claims) extended two days after defendant Marla Brinson, the Director of Student Life at CSI, prohibited several plaintiffs from distributing campaign literature bearing the name "Student Union." According to plaintiffs, President Springer acted to the detriment of the plaintiffs when she cancelled one of the two additional days. Plaintiffs simply argue that the reduction of the election extension ordered by SERC should be viewed as part of a pattern of acts by Springer that targeted plaintiffs, and their colleagues with the same views, with disfavored treatment.

Judge Pollak recommends dismissal of all defendants sued in this claim, *i.e.* Springer. SERC and the members of SERC, except Brinson. Plaintiffs object only to the extent that they argue that Springer should not be dismissed, and do not oppose dismissal of the fourth cause of action against SERC. For the reasons stated by Judge Pollak, I agree that this claim should be dismissed against all defendants except Brinson.

**Claims by Plaintiff Pesau and Standing of All Plaintiffs**

Plaintiff Pesau sues as a voter in the 1997 election. The Report and Recom-

mendation finds that he has standing to raise the First Amendment claim, along with the student journalists and candidates. I agree and reject the objections of the defendants.

## II. DISMISSAL OF STUDENT DEFENDANTS (SECOND CAUSE OF ACTION)

■ In addition to the claims brought against Marlene Springer, Carol Jackson, Kathleen Galvez, Marla Brinson, Michael Silva, Winsome Alston, Sibi Geevarghese, W. Ann Reynolds, Robert E. Diaz, Roy Moskowitz, Michael Solomon, CUNY, the CSI, the SERC, the CUNY Board of Trustees, and Matthew Goldstein, plaintiffs have also made certain allegations against Joseph Canale, Juergen Schnetzer, Andre Woods, Charlo Almeda, Christopher Alvarez, KellyAnne Biesty, Mary Anne Christensen, and Luis Cruzatte, all of whom are unrepresented by counsel. These defendants, who are former elected officers of the CSI Student Government, are sued in both their individual and "official" capacities. Third Amended Complaint ¶ 38. Plaintiffs have agreed to dismissal of all claims against student defendant Andre Woods.

Since the students defendants were unrepresented by counsel, and I questioned whether they were state actors, I directed the plaintiffs to address this issue, and they have done so. The students defendants, as well as the Attorney General's office, have responded to the plaintiffs' brief on the subject, and plaintiffs have replied.[2]

In a recent case, *Leeds v. Meltz*, 85 F.3d 51 (2d Cir.1996), the Court of Appeals for the Second Circuit found that a would-be advertiser, whose advertisement seeking information discrediting the CUNY Law School was rejected by the student editors of the Law School's monthly paper, could not sue the student editors, the acting dean of the Law School, or the Law School because he had failed to allege sufficient facts to support the claim that the rejection amounted to state action. Relying on *Rendell–Baker v. Kohn*, 457 U.S. 830, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982), the Court found that the actions of the student defendants were not, as required by *Rendell–Baker*, "fairly attributable to the state" and that, since the decision to reject the advertisement had been that of the students, there was no state action on the part of any defendant.

As the Court of Appeals did in *Leeds*, I look to the specific allegations of the complaint to determine whether the actions of the students, who are private individuals, are "fairly attributable to the state." The essence of the claim against the student defendants is set forth in three paragraphs of the Third Amended Complaint as follows:

44. On Thursday, April 24, 1997, the copy for the May 1997 edition of the *College Voice* was delivered to the printer. The issue was scheduled to be printed and delivered to campus by 8 PM on Monday, April 28th. Voting in the Spring Election was scheduled to begin on April 30th at 9 AM and the election was to run until the afternoon of May 3, [1997]. On April 28th, around 3 PM,

---

**2.** The student defendants also have filed affidavits seeking judgment in their favor on various additional grounds. Without having filed a motion for summary judgment, they appear to be seeking to convert what is in effect a motion to dismiss to one for summary judgment. Since I directed plaintiffs to address

only the state action issue, any effort to turn this motion into one for summary judgment on the merits is rejected, without prejudice, and none of the factual materials submitted by the student defendants have been considered.

one of the editors was informed by the printer that the Student Government had directed the printer to impound the issue, which had already been printed, and hold it at the printer's shop. The editors later learned that the impoundment had been ordered by Student Government Publication Commissioner Juergen Schnetzer, who wanted the paper held at the printer until the third week of May, after the Spring Election was over. Mr. Schnetzer was a candidate for re-election to Student Government on the Students For Students ("SFS") slate which opposed the Student Union slate endorsed by the *College Voice.*

45. The *College Voice* retained an attorney who informed the Defendants that he was preparing to seek a federal court order to release the impounded newspaper.

46. On April 29, 1997, Student Government met in executive session and, on information and belief, refused to overrule Mr. Schnetzer's order directing the impoundment of the newspaper. Members of the CSI administration subsequently overruled the Student Government and ordered the newspaper released. After being impounded for nearly a day, the newspaper was delivered to the campus late in the day on April 29, 1997, only hours before voting in the Spring Election was scheduled to begin on April 30th at 9 AM.

These allegations are insufficient under any of the state action formulations available to bring private individuals within the ambit of Section 1983 liability. *See Archer v. Economic Opportunity Commission of Nassau County, Inc.,* 30 F.Supp.2d 600 (E.D.N.Y.1998) (summarizing the various formulations for determining who is a state actor). "Extensive regulation and public funding, either alone or taken together, will not transform a private actor into a state actor; instead, the state must have exerted its coercive power over, or provided significant encouragement to, the defendant before the latter will be deemed a state actor." *Leeds,* 85 F.3d at 54. Thus, that the student publication in *Leeds* was supported by mandatory student activity fees and from food services funds allocated by a student association, was insufficient to establish state action. Similarly, in *Rendell–Baker,* the Supreme Court found an absence of state action even though the private school being sued for retaliatory discharge of the plaintiffs operated with 90% public funding, where "the decisions to discharge the petitioners were not compelled or even influenced by any state regulation." 457 U.S. at 841, 102 S.Ct. 2764.

Here, too, mere public funding is not enough where the complaint itself makes clear that the challenged conduct was neither "compelled or even influenced by" the actions of public actors or bodies. That, as alleged in the complaint, the school authorities immediately revoked the impoundment when they learned of it, tends to belie the claim that the students were acting either on behalf of, or as required by, or even as influenced by, any dictates of the school. Rather, it supports the conclusion that the student defendants' actions were not "fairly attributable to the state."

Plaintiffs argue that *Rosenberger,* 515 U.S. at 819, 115 S.Ct. 2510, establishes that the expenditure of money derived from student activity fees by a student government organization is necessarily state action. But in *Rosenberger* the challenge was to a University regulation barring expenditures of student activity fees for "religious organizations." The case did not address actions by students that are not compelled by the State. Thus, although in *Rosenberger* the Student Council denied funding to a religious student news-

paper, it did so on the ground that the denial violated a University regulation.

Plaintiffs attempt to distinguish *Leeds* on the ground that the student journalists in *Leeds* "were authorized speakers in a public forum" whose free speech rights were being vindicated. Plaintiffs Surreply p. 11. Plaintiffs thus attempt to avoid the clear holding of *Leeds* that the student defendants were NOT state actors, even though they were the editors of the CUNY law school newspaper, which was supported by mandatory student activity fees. The fallacy of this attempt to avoid the holding of *Leeds* is clear when one recognizes that the Court of Appeals for the Second Circuit has not hesitated to find that state actors have their own free speech rights. *See, e.g., X–Men Security, Inc. v. Pataki,* 196 F.3d 56, 68–70 (2d Cir.1999); *Hammerhead Enterprises, Inc. v. Brezenoff,* 707 F.2d 33, 36–37 (2d Cir. 1983), *cert. denied,* 464 U.S. 892, 104 S.Ct. 237, 78 L.Ed.2d 228 (1983). In *Leeds,* the Circuit did not hold that the student editors were state actors who had the right to reject the advertisement because of their own First Amendment rights. They held that the student government editors were not state actors.

Finally, plaintiffs rely on *Alabama Student Party v. Student Government Association,* 867 F.2d 1344 (11th Cir.1989), and *Sellman v. Baruch College,* 482 F.Supp. 475 (S.D.N.Y.1979), for the proposition that student government associations are state actors. The Attorney General argues that these cases are factually distinct. The issue of whether state action exists indeed requires close attention to the specific facts alleged. More importantly, in *Alabama Student Party,* there was no dispute in the Circuit that the defendant Student Government Association was a state actor, so the issue was not litigated. 867 F.2d at 1344–47. *Sellman,* in which the issue was litigated, did find state action in the conduct of a student government association, but it was decided before either *Rendell–Baker* or *Leeds.* The venerable late Judge Edward Weinfeld, in concluding there was state action in *Sellman,* found that the student government was a creature of governmental agencies, that it was funded by mandatory student fees and that the interlocking relationships between the school and the student body taken together were sufficient to attribute the students' actions to the State. Today, given the decisions in such cases as *Rendell–Baker* and *Leeds,* a different analysis of the actual conduct challenged, and its relationship to the State, is required. As just described, that analysis persuades me that state action cannot be established here.

In the absence of state action, the claims against the student defendants must be dismissed.

## CONCLUSION

The plaintiffs' motion for partial summary judgment against Marlene Springer is denied. The CUNY defendants' motion for summary judgment is denied in part and granted in part. The student defendants' motion to dismiss is granted.

In sum, the second, sixth, and eighth causes of action are dismissed in their entirety, and all the claims against defendants CUNY, CSI, the CUNY Board of Trustees, SERC, Goldstein, Reynolds, Alston, Geevarghese, Diaz, Moskowitz, Solomon, Galvez, Joseph Canale, Juergen Schnetzer, Andre Woods, Charlo Almeda, Christopher Alvarez, KellyAnne Biesty, Mary Anne Christensen, and Luis Cruzatte are dismissed.

**SO ORDERED.**