Jackson **LEEDS**, Plaintiff,

v.

Jonathan S. **MELTZ**, Anthony Mansfield, Susan Ferraro, Co–Editors–In–Chief of the Brief, The City University of New York School of Law Newspaper, Merrick T. Rossein, Acting Dean of the Cuny School of Law at Queens College, and Unknown John and Jane Does, Agents, Employees of Cuny School of Law at Queens College and/or the City University of New York, In Their Official and Individual Capacities, Defendants.

Civ. A. No. CV–96–0602.

United States District Court, E.D. New York.

Sept. 28, 1995.

Jackson Leeds, Plaintiff pro se.

Jonathan S. Meltz, Anthony Mansfield, Susan Ferraro, Defendants pro se.

Dennis C. Vacco, Atty. Gen. of State of N.Y., for defendants.

*MEMORANDUM AND ORDER*

TRAGER, District Judge:

The defendants in this case, the acting dean of the City University of New York ("CUNY") School of Law, and three student editors of the school's newspaper, *The Brief,* ("paper") move to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, the court grants these motions.

### Background

The plaintiff, Jackson Leeds, is an attorney who graduated from CUNY Law School in 1993. In September 1994, two of Leeds' articles highly critical of the law school were published by the paper. In early 1995, he sought to have a classified advertisement published in the school newspaper. In the proposed advertisement, Leeds intended to solicit material which would discredit certain faculty or administrators at the school and which would be "for use in a federal civil rights action against the school." Compl.Ex. 7. Leeds also sought in the proposed advertisement to urge individuals who had been discriminatorily treated by the school's criminal defense clinic to join in a complaint directed against the clinic which he had filed with the Office of Civil Rights of the U.S. Department of Education.

On Friday evening, February 10, 1995, Leeds learned that the three student editors had refused to publish the advertisement in the newspaper because they felt it was defamatory and would expose them and the paper to litigation.[1] Compl. ¶ 30. On the following Monday morning, February 13, 1995, Leeds filed his complaint in this court claiming his First and Fourteenth Amendment rights were violated by the editors' refusal to print his advertisement. Compl. date stamped in Clerk's Office, U.S. District Court, E.D.N.Y., 10:41 a.m., February 13, 1995.

In his complaint, Leeds claims—"upon information and belief"—that certain administrators and faculty at the school "prevented the publication" of his advertisement in *The Brief,* without giving any details of how this occurred. Compl. ¶ 33. Leeds alleges that the school threatened retaliation against the paper for printing his articles and that the school influenced *The Brief* by threats of withholding financial support and computer equipment. Compl. ¶ 23. Leeds did not fur-

---

**1.** *The Brief* had previously published articles by Leeds in its September 12, 1994 issue and had thereafter rejected his submissions. Leeds Opp'n to Defs.' Mot. p. 7.

ther allege the circumstances under which these threats were made nor how the school caused the paper's editors to reject his advertisement or otherwise "prevented the publication" of the advertisement.

Leeds also alleges that Acting Dean Rossein had failed to conform to the "custom of the CUNY that student newspapers have a faculty adviser." Compl. ¶¶ 16, 17. In ¶ 20, he alleges that Dean Rossein's failure to appoint a faculty adviser for the paper caused Leeds' constitutional deprivation.

With respect to the other employees of CUNY (none of whom are named defendants in the complaint although some employees are specified by name in the complaint itself), Leeds claims that they acted against the paper in retaliation for its printing his articles. Compl. ¶ 23.

Leeds alleges that the student editors, although not employed by the School of Law, were acting under color of state law in their decision not to publish his advertisement, and thus are thereby within the reach of 42 U.S.C. § 1983. At argument Leeds asserted that the editors were state actors or "conspir[ed] with state actors." Hearing Tr., p. 3. He also claims that the paper is a "public forum." Compl. ¶ 35.

## Discussion

### (1)

■ To establish liability for constitutional violations under § 1983 it is essential that the plaintiff show that his rights were violated as a result of state action. In *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S.Ct. 2764, 2769–70, 73 L.Ed.2d 418 (1982), the Court held that there was no state action in a school's retaliatory discharge of teachers following their communication with the board about a dispute with the head of the school even though the state provided virtually all of the school's funding and oversaw its hiring decisions. The absence of any showing that state actors or state policy played a part in

the discharges was dispositive. In *Sinn v. The Daily Nebraskan*, a substantially similar case to that before this court, the Court of Appeals for the Eighth Circuit held that the refusal by a state college newspaper to publish an advertisement did not constitute state action "where there was a complete lack of control over the student newspaper on the part of the University officials," 829 F.2d 662 (8th Cir.1987).

■ It is clear that the paper's editors who are law students are not state actors. The Court of Appeals for the Fifth Circuit has held: "The fact that a publication is sponsored by a state agency is not sufficient in itself ... to establish state action." *Estiverne v. Louisiana State Bar Assoc.*, 863 F.2d 371 (1989). The *Estiverne* court distinguished the case before it—in which it was undisputed that the state bar journal editors acting pursuant to statute *were* state actors—from a case, like that before this court, in which the publication is, despite state sponsorship, "sufficiently independent that its editorial decisions may not be characterized as state action." *Id.* at 376.

■ Here, any inference of influence by the school administration that might make the student editors state actors is, in fact, undermined by Leeds' own pleading. Leeds alleges that the administration retaliated against the paper by cutting its budget and access to facilities, Compl. ¶ 23, and that Dean Rossein had failed to provide a faculty adviser to the paper. Compl. ¶ 20. These allegations indicate *absence* of control over the paper by the law school administration, faculty and staff.[2]

It is the very absence of control of the paper by the law school administration that establishes, based on Leeds' own pleadings, that the decision of the editors was *not* state action. As the Court of Appeals noted in *Sinn v. The Daily Nebraskan*: "The *Rendell–Baker* Court pointed out that regulation

---

**2.** Nor, contrary to Leeds' allegation, even if the editors *were* found to be state actors, is it clear that the paper *is* a public forum. "The fact that 'a government facility is specifically used for the communication of information and ideas' does not mean that it is 'ipso facto a public forum.'" *Id.* at 377, quoting *Muir v. Alabama Educ. Televi-*

*sion Comm'n*, 688 F.2d 1033, 1041–42 (5th Cir. 1982) (en banc). "If a speaker does not have a right of access to a facility, that facility by definition is not a 'public forum' and the speaker is without grounds for challenge under the public forum doctrine." *Muir*, 688 F.2d 1033, 1043.

and subsidization of an entity, without more, do not create state action, but that the proper test was, rather, whether the challenged action was 'fairly attributable' to the state," 829 F.2d 662, 665 (1987). Plaintiff has alleged no facts from which it may plausibly be inferred that the editor's actions were "fairly attributable" to the law school administration.[3]

Determination that the editors are not state actors is dispositive of the matter here. "If the [publication] is not a state actor, then [plaintiff's] claim would necessarily fail because the first amendment precludes us from recognizing a right of reply against the private press." *Estiverne*, note 2 at 375.

## (2)

■ District courts must be "mindful of the liberality to be accorded *pro se* pleadings," *Pino v. Ryan*, 49 F.3d 51, 52 (2d Cir.1995), and ordinarily hold them to " 'less stringent standards than formal *pleadings drafted by lawyers,*' " *Ferran v. Town of Nassau*, 11 F.3d 21 (2d Cir.1993), quoting *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175–76, 66 L.Ed.2d 163 (1980) (emphasis added) because, according to the Court of Appeals for the Second Circuit, "some effort [must be made] to protect a party .. appearing [pro se] from waiving a right to be heard because of *his or her lack of legal knowledge.*" *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (1993) (emphasis added). Here, however, the complaint *was* drafted by a lawyer. Plaintiff has been admitted to practice and notes in the complaint that he has prosecuted several actions previously. Compl. ¶ 14. Thus, relaxation of already liberal pleading standards is not appropriate despite the plaintiff's *pro se* status.

■ More importantly, even under modern-day liberal pleading standards, a plaintiff's "bald assertions, unsupportable conclusions, and 'opprobrious epithets,'" are not sufficient to state a claim, *The Dartmouth Review v. Dartmouth College*, 889 F.2d 13, 16

(1st Cir.1989) quoting *Chongris v. Board of Appeals*, 811 F.2d 36, 37 (1st Cir.1987) quoting *Snowden v. Hughes*, 321 U.S. 1, 10, 64 S.Ct. 397, 402, 88 L.Ed. 497 (1944). Citing *Dartmouth Review*, the Second Circuit has recently enunciated the standard for dismissal under Rule 12(b)(6) in a civil rights case alleging racial discrimination: "In order to survive a motion to dismiss, the plaintiff must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of racially discriminatory intent," *Yusuf v. Vassar College*, 35 F.3d 709, 713 (2d Cir. 1994). *See also, Martin v. New York State Dep't of Mental Hygiene*, 588 F.2d 371 (2d Cir.1978) ("It is well settled in this Circuit that a complaint consisting of nothing more than naked assertions, and setting forth no facts upon which a court could find a violation of the Civil Rights Acts, fails to state a claim under Rule 12(b)(6).) *Accord, Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir.1990) (In a RICO action, "It is incumbent on a plaintiff to state more than conclusory allegations to avoid dismissal of a claim predicated on a conspiracy to deprive him of his constitutional rights.")

Furthermore, the nature of this case-involving, as it does, the First Amendment rights of a student newspaper to exercise its discretion in accepting advertisements—requires a more substantial showing than Leed's factually unsupported allegation of influence upon the newspaper editors by state actors at the law school. As most student publications generally are without substantial resources, baseless actions can impair the First Amendment rights of the publications and their student participants. Almost certainly and quite reasonably, most students— if they become aware that complaints can be sustained on the flimsy basis present here— would be unwilling to run the risk of having to pay substantial legal fees to defend themselves from unjustified legal actions and would forego the opportunity to participate

---

**3.** Moreover, the causal nexus between the alleged failure by the Dean to appoint a faculty adviser and the rejection of Leeds' advertisement is dubious. Where Leeds is a third party whose alleged constitutional injury is only a remote and speculative result of the defendant's alleged conduct, his standing is questionable, even assuming *arguendo* the Dean did in fact have such a duty under CUNY "custom." *See, Allen v. Wright*, 468 U.S. 737, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984), holding that causation and redressability are independent requirements for standing to sue.

in this activity.[4] Thus, permitting this action to proceed based on a conclusory complaint would be especially inappropriate where three of the defendants are students—albeit law students—who are without funds of their own to retain counsel.[5]

In addition to these concerns about the First Amendment rights of the students, this is not an instance where a bona fide prefiling investigation would be expected to be unavailing. It is true that, at times, only court-ordered discovery may enable a plaintiff to learn the underlying facts in, for example, a civil RICO conspiracy case where even energetic prefiling investigation may prove fruitless because the financial and other concerns of potential defendants make them less than forthcoming with information.

Here, however, we are dealing with a situation where, if there is any substance to the claim, an effective prefiling investigation would have been expected to produce facts or circumstances to substantiate a good faith filing. It is difficult to believe that all three student editors would have supinely accepted the alleged intimidation of the school administration. Even if they had felt intimidated, students being students, more than likely they would have at least complained to some of their student colleagues about the administration or faculty pressure and the issue, in the natural course of events, would inevitably have become a subject of student discussion at the law school. Thus, had plaintiff undertaken even a minimal investigation instead of filing at the earliest possible opportunity, he would, if there were any merit to his claim, in short order have learned enough to provide more than his present conclusory pleading.[6]

Under Rule 12(b)(6), "a complaint must not be dismissed 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Yusuf v. Vassar College,* 35 F.3d 709, 713 (2d Cir.1994), but as the Court of Appeals for the First Circuit observed in *Dartmouth Review:*

> Gauzy generalities, unsupported conclusions, subjective characterizations, and problematic suppositions can sprout as easily as crabgrass in an imaginative litigant's (or lawyer's) word processor. Therefore, to avoid tarring defendants' reputations unfairly and to prevent potential abuses, we have consistently required plaintiffs to outline facts sufficient to convey specific instances of unlawful discrimination. 889 F.2d 13, 16 (1989).

Here, Leeds has not stated a claim that his rights were violated as a result of state action. His allegation, that the decision not to publish his advertisement resulted from the actions of the school, was wholly conclusory and is consequently insufficient under Rule 12(b)(6).

### Conclusion

Plaintiff has failed to state a claim that his constitutional rights were violated as a result

---

**4.** The student defendants, of course, vigorously deny any involvement by the school administration in their decision not to publish plaintiff's ad, noting that they have in the past published "highly critical articles [about] the Dean as well as the school." Hearing Tr., 5/3/95, p. 10.

**5.** The State has refused to provide representation for the students since, in its view, the school paper is an independent student-run operation over which it has no control and towards which it has no responsibility. The student defendants have therefore been forced to rely on the pro bono assistance of a friend and former classmate who is now an associate in a respected law firm. The associate is apparently not in a position to appear formally on behalf of his friends.

**6.** At the oral argument on the motion, plaintiff was asked what was the basis for his assertion that, "upon information and belief", the school administration and some members of the faculty played a role in the students' decision not to publish his advertisement. Compl. ¶ 33. In essence, the plaintiff's response was that Acting Dean Rossein had a personal animus against him. From this, plaintiff would have the court infer that 1.) Dean Rossein was aware of the proposed ad, 2.) acted to prevent its publication, and 3.) that the students acquiesced in this demand. Hearing Tr., p. 14.

At an earlier point in the hearing, plaintiff also alluded to a claim by a former computer consultant for the school that another administrator "retaliates against newspapers by taking away their computer, gives them small offices and other things." Hearing Tr., p. 3. Again, this is hardly a basis for finding any involvement by the administration in the operations of a student-run newspaper. If anything, if true, this alleged retaliation signifies just the contrary—frustration by the school's administration at its inability to control the students.

of state action because his wholly conclusory allegations fail to support any plausible inference of state action. His claim is consequently insufficient under Rule 12(b)(6). Accordingly, the court grants defendants' motions to dismiss. The Clerk of the Court shall issue judgment for the defendants.