**Jackson LEEDS, Plaintiff–Appellant,**

**v.**

**Jonathan S. MELTZ, Anthony Mansfield, Susan Ferraro, Merrick T. Rossein, Unknown John and Jane Does, Defendants–Appellees.**

**No. 1328, Docket 95–9041.**

United States Court of Appeals,
Second Circuit.

Argued April 12, 1996.

Decided May 21, 1996.

Jackson Leeds, Pro se.

Jonathan S. Meltz, Susan Ferraro and Anthony Mansfield, Pro se.

Before: KEARSE and ALTIMARI, Circuit Judges, and MORAN, Senior District Judge.[1]

MORAN, Senior District Judge:

## BACKGROUND

Plaintiff-appellant Jackson Leeds (Leeds) filed this lawsuit pursuant to 42 U.S.C.A. § 1983 (§ 1983) against the acting dean (Merrick Rossein) of the City University of New York (CUNY) Law School, and the

---

1. Honorable James B. Moran, of the United States District Court for the Northern District of Illinois, sitting by designation.

three co-editors-in-chief (Jonathan Meltz, Anthony Mansfield, and Susan Ferraro) of CUNY Law School's monthly paper, "The Brief". Leeds alleges that the student editors violated his First and Fourteenth Amendment rights to free expression by failing to publish his paid advertisement. The district court granted defendants' Rule 12(b)(6) motion to dismiss because plaintiff's "wholly conclusory allegations fail[ed] to support any plausible inference of state action." *Leeds v. Meltz*, 898 F.Supp. 146, 151 (E.D.N.Y.1995). We affirm.

## STANDARD OF REVIEW

 We review the district court's dismissal of a complaint pursuant to Rule 12(b)(6) *de novo. See, e.g., Grimes v. Ohio Edison Co.*, 992 F.2d 455, 456 (2d Cir.) (citations omitted), *cert. denied,* —— U.S. ——, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). We take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiffs. *See, e.g., Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (quoting *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994)). While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice. *See, e.g., Albert v. Carovano*, 851 F.2d 561, 572–573 (2d Cir.1988) (*en banc*) (§ 1981 and intentional discrimination); *Martin v. N.Y. State Dept. of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir.1978) (*per curiam*). A § 1983 suit may be dismissed if the defendants' conduct did not occur under the color of state law. *See, e.g.,* 42 U.S.C.A. § 1983; *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982).

## DISCUSSION

The relevant facts are set out in the district court opinion, *Leeds, supra,* 898 F.Supp. 146, so we repeat only those necessary to our disposition. The Brief is the monthly journal of the CUNY Law School. In early 1995 Leeds submitted the following paid advertisement for publication:

**INFORMATION WANTED**

I. **ANY** material that could **DISCREDIT:** Haywood Burns, Victoria Ortiz, Jennifer Elrod, Rhonda Copelon, and Merrick Rossein for use in federal civil rights action. **CONTACT JACKSON LEEDS;** ...

II. Has CUNY Criminal Defense Clinic/Seminar **DISCRIMINATED** against you?

**ADD TO THE RECORD!**

(Leeds Mem. at 1 (emphasis in original)). *See also Leeds,* 898 F.Supp. at 147. The student editors rejected appellant's classified advertisement on February 10, 1995, for fear that its publication would subject them to a defamation lawsuit (Complaint, ¶ 30). The next business day Leeds filed suit pursuant to § 1983, claiming that the refusal to print his advertisement violated his First and Fourteenth Amendment rights to free expression.[2] He sought declaratory and compensatory relief and punitive damages (Complaint, p. 9, ¶¶ 1–3).

The district court concluded that the complaint did not provide a plausible basis for inferring that the student editors were state actors in rejecting the advertisement, and we agree.

The complaint assumes that the rejection of the advertisement was state action. Therefore, plaintiff claims, that rejection violated his constitutional rights. The thrust of his allegations and exhibits is not, however, that CUNY controlled the newspaper but that it failed to exercise control. Plaintiff alleges that Rossein violated plaintiff's constitutional rights by failing to exercise sufficient control over the newspaper so as to assure that plaintiff's rights were not violated. While the complaint alleges that the newspaper is supported in part from mandatory student activity fees and from food services funds allocated by a student association, the complaint reveals that that support was only $900 in 1994. Plaintiff further claims that Rossein had a duty to allow free speech

2. His advertisement was rejected at 7:10 p.m. on Friday, February 10, 1995; his complaint was docketed at 1:07 p.m. on Monday, February 13, 1995.

in the student publication and that he was in breach of that duty by failing to establish policies and procedures to protect First Amendment rights and by failing to appoint and train a faculty adviser.

In addition, plaintiff's own exhibits to the complaint include a legal memorandum to the CUNY Council of Presidents dated January 11, 1995, expressly disclaiming any right of the institution to control student publications, such as those financed through student activity fees. Another exhibit is an excerpt from the Manual of General Policy of the CUNY Board of Trustees, in which student publications "are asked" to follow certain advertisement standards, none of which is germane here. The closest plaintiff comes to alleging state action is an allegation, upon information and belief, that various CUNY employees prevented the publication of the advertisement.

■ We begin our analysis of this case with the observation that the press and the government have had a "history of disassociation." *Associates & Aldrich Co. v. Times Mirror Co.*, 440 F.2d 133, 136 (9th Cir.1971) (citation omitted). *Cf.* Potter Stewart, *Or Of The Press*, 26 *Hastings L.J.*, 631, 634 (1974) ("The primary purpose of the constitutional guarantee of a free press was ... to create a fourth institution *outside the Government* as an additional check on the three official branches" (emphasis added)). This does not imply that all newspaper decisions are shielded from constitutional scrutiny. Rather, it indicates that when a paper's editorial decision is being challenged the burden of proving state action or state coercion will be a stringent one.

■ It is axiomatic that the First and Fourteenth Amendments, and § 1983, apply only to state actors. At the same time, though, a private individual may be considered a state actor for purposes of a constitutional challenge if his/her conduct is "fairly attributable to the state." *Rendell–Baker*, 457 U.S. at 838, 102 S.Ct. at 2769 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 2754, 73 L.Ed.2d 482 (1982)). Extensive regulation and public funding, either alone or taken together, will not transform a private actor into a state actor; instead, the state must have exerted its coercive power over, or provided significant encouragement to, the defendant before the latter will be deemed a state actor. *See Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S.Ct. 2777, 2786, 73 L.Ed.2d 534 (1982) (citations omitted). Two other circuit courts of appeal have applied these rules to nearly identical facts. In *Sinn v. The Daily Nebraskan*, 829 F.2d 662 (8th Cir.1987), the college student newspaper at the University of Nebraska at Lincoln refused to publish a "roommate wanted" advertisement that described the advertiser's sexual orientation. The plaintiff filed suit alleging a violation of her First Amendment right to free expression. The district court found that the paper was an "instrumentality of the state" but that the function of editorial decisionmaking was exempt from a constitutional challenge. *See id.* at 664. The Eighth Circuit affirmed, rejecting plaintiff's arguments that the committee which set the paper's policies "derive[d] its existence, legal status, power, and authority from the Regents," and that the paper was funded by the state. *Id.* at 664.

In *Mississippi Gay Alliance v. Goudelock*, 536 F.2d 1073 (5th Cir.1976), *cert. denied*, 430 U.S. 982, 97 S.Ct. 1678, 52 L.Ed.2d 377 (1977), the Fifth Circuit held that a student newspaper at the Mississippi State University (MSU) need not publish a paid advertisement. The court minimized the fact that the paper was funded in part from a non-waivable fee charged to the students by MSU and instead relied on the fact that the students selected the paper's editor. The court also found relevant MSU's inability to forbid the paper from publishing the advertisement.

■ We do not mean to suggest that a student publication cannot be a state newspaper. As the dissent in *Mississippi Gay Alliance v. Goudelock, supra*, 536 F.2d at 1080–86, points out such an assertion would be far too sweeping. In *Lee v. Board of Regents of State Colleges*, 441 F.2d 1257 (7th Cir.1971), for example, the court found that plaintiff's free expression rights were violated when the school newspaper refused to publish his paid advertisement, but there the defendants conceded that the paper was a "state facility,"

*id.* at 1258. But here the plaintiff's allegations and exhibits establish that CUNY did not, and recognized that it could not, control the editorial decisions of student editors. We do not believe that the bare conclusion upon information and belief that various CUNY employees somehow "prevented" publication rescues this complaint in light of those allegations and exhibits. The decision to reject the advertisement cannot be "fairly attributable" to the state.

We have reviewed the other arguments relied upon by plaintiff and find them without merit.