Gary A. **KAIBLE,** Plaintiff,

v.

**U.S. COMPUTER GROUP, INC.,** Defendant.

No. CV 98–3290 (ADS).

United States District Court, E.D. New York.

Oct. 25, 1998.

Brian K. Saltz, Farmingdale, NY, for Plaintiff.

Rivkin, Radler & Kremer, Uniondale, NY (Erica B. Garay, Maria A. Maestranzi, of counsel), for Defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff, Gary Kaible ("Kaible" or the "plaintiff") is a male who was discharged from the employ of the defendant company, U.S. Computer Group ("U.S. Computer" or the "defendant"). Although U.S. Computer claims that its decision stemmed from a reduction in workforce, Kaible alleges that it was impermissible retaliation for engaging in activity protected under Title VII and the New York Human Rights Law, in that he intended to give truthful testimony regarding a female co-worker's sexual harassment and discrimination charge. At issue is the defendant's motion to dismiss under Rule 12(b)(6), which is largely premised on the argument that Kaible's complaint does not allege that

he was engaged in a "protected activity" because Kaible's female co-worker had not yet filed any lawsuit at the time he was discharged. In addition, the defendant provides evidence—outside the pleadings—on the basis of which it contends that Kaible is the alleged "victimizer" who sexually harassed the co-worker at issue. According to the defendant, this evidence mandates dismissal because public policy prohibits a harasser or victimizer from stating a claim for retaliatory discharge under Title VII or the New York Human Rights Law.

## I. BACKGROUND

The following facts are derived from the compliant.

In or about October, 1991, Kaible began working for U.S. Computer, a New York corporation with a principal place of business in Farmingdale, New York (Complaint, at ¶¶ 4–5, 7). Kaible was employed as a Maintenance Sales Representative, and was responsible for selling U.S. Computer's services to "major accounts." (Complaint, at ¶ 7). Kaible reported to John Sullivan ("Sullivan"), U.S. Computer's Senior Vice President, who in turn reported to Stephen Davies ("Davies"), the CEO (Complaint, at ¶ 7).

The complaint states that during the ensuing years, Kaible "performed his job in an exceptional manner and never received any verbal or written warnings." (Complaint, at ¶ 8). In fact, he "was consistently ranked as the number one revenue producing maintenance sales representative and, for the period ending December 1995, his revenue production was the highest of all sales representatives." (Complaint, at ¶ 8). Based on his exemplary performance, he "consistently received increases in his pay." (Complaint, at ¶ 9).

In or about September or October 1995, Kaible learned that a sales representative from U.S. Computer's Philadelphia office, Deidre Meeker, had filed "a charge of sex discrimination and sexual harassment against the company" (Complaint, at ¶ 10). Kaible claims that he was present during meetings held by Davies and Sullivan, and heard them making sexual remarks to Meeker (Complaint, at ¶ 10).

On December 15, 1995, U.S. Computer gave Kaible a $20,000 bonus (Complaint, at ¶ 9). This bonus is reflected in a letter from Davies to Kaible, a copy of which is annexed to the complaint as an exhibit. In this letter, Davies congratulated Kaible for "an excellent sales year," and encouraged him to "keep up the excellent effort." (Complaint, Exhibit D). This letter also indicates that U.S. Computer intended to "review the final bonus numbers in March based upon your final sales numbers for the year, when a further bonus of $ 5,000 will be considered."

At that same time, in or about December 1995, U.S. Computer instructed Kaible to meet with an attorney from the firm of Rivkin, Radler & Kremer, which was representing U.S. Computer in Meeker's discrimination action. (Complaint, at ¶ 11). When he met with Rivkin's attorneys, they "questioned about whether he ever saw Davies and Sullivan sexually harass Meeker. Kaible responded truthfully that he had seen such harassment." (Complaint, at ¶ 11). Kaible informed Allen Cook, U.S. Computer's Senior Vice President, and several sales representatives that he "planned to tell the truth about Meeker's allegations" (Complaint, at ¶ 14).

Sometime later in December 1995 or in early January 1996, Sullivan approached Kaible and said that he heard about what was discussed during the meeting with the Rivkin attorneys. Davies also approached Kaible, saying that he could not believe that Kaible would hurt U.S. Computer by "telling the truth." Davies accused Kaible of not being part of "the team." (Complaint, at ¶ 12).

On January 16, 1996, Sullivan and Davies told Kaible that U.S. Computer was making cutbacks and that he was being laid off, just a month after giving him a $20,000 bonus and complimenting him for his "excellent" salesmanship. No other sales representatives with major accounts were discharged (Complaint, at ¶ 14).

## II. DISCUSSION

### A. Motion to Dismiss Under 12(b)(6): The Standard

The Court begins by noting the stringency of the standard that the movant must meet in

order to obtain dismissal for failure to state a claim under Rule 12(b)(6). On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle them to relief. *S.E.C. v. U.S. Environmental, Inc.*, 155 F.3d 107 (2d Cir.1998); *Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 41 (2d Cir.1997) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 [1957]). It is not the Court's function to weigh the evidence that might be presented at a trial; instead, the Court must merely determine whether the complaint is legally sufficient. *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir.1985). Thus, the Court must accept the allegations of the complaint as true, and construe all reasonable inferences in favor of the plaintiffs. *Connell v. Signoracci*, 153 F.3d 74 (2d Cir.1998); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir.1996); *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991).

The Court is mindful that under the modern rules of pleading, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and that "[a]ll pleadings shall be so construed as to do substantial justice," Fed.R.Civ.P. 8(f). The issue before the Court on a Rule 12(b)(6) motion "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claim." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995), *cert. denied*, — U.S. —, 117 S.Ct. 50, 136 L.Ed.2d 14, (1996). Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal. *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995) (quoting *Weisman v. LeLandais*, 532 F.2d 308, 311 [2d Cir.1976] [per curiam]).

Preliminarily, the Court notes that the defendant's motion papers refer extensively to matters outside the complaint. Specifically, attached to the defendant's notice of motion are 8 exhibits; another 2 exhibits are attached to the reply papers. Such exhibits include the following: (1) the cover letter, dated January 18, 1996, which accompanied the complaint filed in Meeker's federal lawsuit against U.S. Computer; (2) Kaible's employment contract, which includes a restrictive non-competition clause; (3) the proposed severance agreement and termination letter U.S. Computer sent to Kaible on or about January 18, 1996; (4) a December 13, 1995 letter from Davies to Kaible, in which in addition to complementing Kaible, he suggested that Kaible needed to work on abiding by company procedures, such as appropriate paperwork; and (5) a "Certificate" signed by Meeker stating that "Gary Kaible was one of my principal harassers while I was employed at U.S. Computer." The defendant also supplies the Court with various documents characterized as transcript excerpts, although there is no indication on the face of the documents themselves as to the name of the witness allegedly testifying, the date of the purported testimony, the forum where the testimony was taken, the name of the attorney conducting the questioning, or who transcribed the proceedings. According to the defendants, all of these documents demonstrate: that U.S. Computer fired Kaible before it had any knowledge of Meeker's federal lawsuit; that Kaible had an ulterior motive for filing this action, namely, to get out of his non-competition agreement; that his termination was due to a reduction in workforce; and that Kaible was the "principle harasser" in Meeker's lawsuit.

In deciding whether the plaintiff has adequately pleaded his Title VII and NYHRL claims, the Court declines to consider any of these exhibits, or any of the defendant's arguments based on them. When determining a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6), a district court is required to limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference. *Newman & Schwartz v. Asplundh Tree Expert*, 102 F.3d 660, 662 (2d Cir.1996). Since the defendant's exhibits were neither attached to the complaint, nor incorporated by reference, the Court declines to consider them. In the Court's view, it is especially inappropriate to consider such extrinsic materials where, as here, the case is in its

infancy, and the docket indicates that discovery has not yet begun.

The Court now addresses the defendant's attack on the complaint, without regard to the exhibits produced by the defendant.

## B. Title VII Retaliation: The Standard

The Court considers Kaible's state law claims in tandem with his Title VII claims "because New York courts rely on federal law when determining claims under the New York Human Rights Law." *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2d Cir.1996) (citing federal and New York State cases).

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a), prohibits employers from firing workers in retaliation for certain conduct. In this regard, Section 704(a) provides that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Similarly, New York's Executive Law prohibits the discharge of employees in retaliation for their opposition to discriminatory practices or their participation in an investigation under the New York Human Rights Law. N.Y.Exec.Law § 296(1)(e), provides, in pertinent part, that:

> [i]t shall be an unlawful discriminatory practice ... [f]or any employer ... to discharge, expel or otherwise discriminate against any person because he has opposed any practices forbidden under [the Human .Rights Law] or because he has filed a complaint, testified or assisted in any proceeding under [the Human Rights Law].

Thus, activities protected under Title VII and NYHRL fall into two broad categories: (1) *opposing* any practice made an unlawful employment practice by Title VII or the NYHRL (an "opposition claim") or (2) making a charge, testifying, assisting, or *partici-*pating in any manner in an investigation, proceeding, or hearing under Title VII or the NYHRL (a "participation claim").

■ The order and allocation of burdens of proof in retaliation cases follow that of general disparate treatment analysis as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff bears the burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. To prevail in a Title VII retaliation case, a plaintiff must demonstrate: (1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) adverse action by the defendant; and (4) a causal connection between the protected activity and the adverse action demonstrating a retaliatory motive. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir.1996); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995); *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 64 (2d Cir.1992).

■ "With respect to the first element, participation in protected activity, the plaintiff need not establish that the conduct [ ]he opposed was actually a violation of Title VII, but only that [ ]he possessed a 'good faith, reasonable belief that the underlying employment practice was unlawful' under that statute." *Galdieri–Ambrosini v. National Realty & Development Corp.*, 136 F.3d 276, 292 (2d Cir.1998) (citing and quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d at 1178; *Manoharan v. Columbia.University College of Physicians & Surgeons*, 842 F.2d 590, 593 [2d Cir.1988] ). The reasonableness of the plaintiff's belief is to be assessed in light of the totality of the circumstances. *Reed v. A.W. Lawrence & Co.*, 95 F.3d at 1178. As to the second element, implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII. *Galdieri–Ambrosini v. National Realty & Development Corp.*, 136 F.3d at 292.

■ Upon such a showing, the defendant must demonstrate legitimate reasons for its actions, whereupon the plaintiff bears the burden of showing that the defendant's explanations are pretext for the true discriminatory motive. *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d at 714; *Tomka v. Seiler Corp.*, 66 F.3d at 1308.

### i. *Did Kaible Adequately Allege He Engaged in "Protected Activity"?*

In Kaible's Memorandum of Law, he contends that the "protected activity" he engaged in was "me[eting] with U.S. computer's attorneys in connection with Meeker's *EEOC charge*, and ... [telling] the attorneys that he saw Davies and Sullivan sexually harass Meeker." (Plaintiff's Memorandum of Law, at 5) (emphasis added). The complaint, however, is not quite so specific: it does not indicate where Meeker lodged the charge, stating only that "[i]n or about September or October 1995, Kaible became aware that ... Meeker ... had filed *a charge* of sex discrimination and sexual harassment against the company." (Complaint, at ¶ 10) (emphasis added). However, the defendant does not dispute the fact that Meeker filed an EEOC charge prior to Kaible's discharge; in fact, the Davies' supporting affidavit states bluntly that "[o]n July 17, 1995, Meeker filed *an EEOC claim.*" (Davies Aff., at ¶ 12) (emphasis added). Accordingly, for purposes of this motion, the Court construes the complaint as alleging that Meeker filed a charge with the EEOC prior to Kaible's discharge.

With the standards set forth above in mind, the Court considers whether the complaint adequately states a claim under either the "opposing" and "participating in any manner" prongs of Title VII and the NYHRL.

■ In the Court's view, the plaintiff has pleaded a claim for "opposing any practice" prohibited by Title VII. "In addition to protecting the filing of formal charges of discrimination, ¶ 704(a)'s opposition clause protects as well informal protests of discriminatory employment practices, including making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of co-workers who have filed formal charges." *Sumner v. U.S. Postal Service*, 899 F.2d 203, 209 (2d Cir.1990) (citing *Grant v. Hazelett Strip–Casting Corp.*, 880 F.2d 1564, 1569 (2d Cir.1989), and Schlei & Grossman, Employment Discrimination Law, 548–49 [1983] ). Giving the plaintiff the benefit of the doubt, the Court finds that Kaible's allegations that he told U.S. Computer's attorneys that he had seen Davies and Sullivan sexually harass Meeker (Complaint, at ¶ 11), and that he announced to Cook and fellow sales representatives that he "planned to tell the truth about Meeker's allegations" adequately plead an opposition claim.

■ In addition to an "opposition" claim, the Court finds that the plaintiff has adequately alleged that he "participated in any manner in an investigation, proceeding, or hearing" under Title VII and the NYHRL. The complaint, as the Court construes it, states that Meeker filed an EEOC sexual harassment charge against U.S. Computer, that Kaible told U.S. Computer's attorneys that he was a witness to this sexual harassment, and that he advised these attorneys, supervisors and co-workers that he "planned to tell the truth" about it. Applying the generous standard of review required on a motion to dismiss, the complaint adequately states that U.S. Computer knew that Kaible would provide evidence favorable to Meeker in connection with her EEOC charge. This is enough—at least at this very early stage of the proceedings—to make out a "participates in any manner" claim.

In this regard, the Court rejects the defendant's assertions that Kaible could not have "opposed" the harassment or "participated in any manner" in an investigation because the various exhibits attached to their motion papers demonstrate that Kaible was the principal harasser. The Court reiterates that it declines to consider these documents on a pre-discovery Rule 12(b0(6) motion to dismiss. The Court also observes that many of the documents purporting to establish these complicated factual issues are merely alleged

excerpts from unidentified witnesses at unspecified, undated proceedings.

The Court also is unpersuaded by the defendant's contention that there was no retaliatory motive at the time of the discharge because Meeker initiated her federal lawsuit after Kaible was fired. This argument misses the point. Kaible's complaint alleges retaliation for "participating in any manner" with the EEOC charge, and not Meeker's lawsuit. Equally off-the-mark is the defendant's contention that there was no "participation" since Kaible's statements supporting Meeker's claims of harassment were made to U.S. Computer's attorneys, and not to EEOC investigators. In the Court's opinion, the complaint alleges that the defendant fired Kaible after learning from its lawyers that he would provide favorable evidence to the EEOC. Rather than wait for him to do so—or so the complaint claims—U.S. Computer beat him to the punch. This adequately states a claim for participating *"in any manner"* in an investigation, proceeding, or hearing under Title VII or the NYHRL.

In this respect, the Court distinguishes the cases the defendant cites for the proposition that mere participation in an internal investigation conducted by the defendant employer does not constitute "participation in any manner in an investigation, proceeding, or hearing." For example, in *Laughlin v. Metropolitan Washington Airports Authority,* 149 F.3d 253, 258 (4th Cir.1998), the Fourth Circuit found that there was no ongoing "investigation, proceeding or hearing" for the plaintiff to participate in at the time she was terminated for covertly copying documents relevant to a co-worker's EEOC charge, where the co-worker did not file the EEOC charge and lawsuit until after the plaintiff's discharge. Here, by contrast, Meeker had already filed her EEOC charge at the time Kaible was terminated.

To the extent that *Clover v. Total System Services, Inc.,* 157 F.3d 824 (11th Cir.1998) holds otherwise, the Court declines to follow this non-binding authority. The Court is persuaded by the dissent, which sharply criticized the decision as follows: "The Majority notes that the types of participation protected by this provision are not spelled out in the statute but nevertheless concludes that an employee is protected only when participating in an investigation conducted by the EEOC or its designated representative. I do not believe that result is required by the language of the statute, prior decisions of this court, or persuasive authority from other courts.... The majority can point to no case which squarely holds [this]. There is certainly no decision from this circuit which so holds." Id. 157 F.3d at 833.

The Court also distinguishes *Douglas v. DynMcDermott Petroleum,* 144 F.3d 364, 373 (5th Cir.1998). In *Douglas,* the plaintiff, an African American woman, was in-house counsel for the defendant-employer, DynMcDermott Petroleum Operations, which manages the U.S. petroleum reserve under contract with the Department of Energy ("DOE"). In June 1994, general counsel asked the plaintiff to attend a meeting with DOE auditors on compliance with the contract's antibias requirements. In response to a query about EEOC complaints from employees, the plaintiff said the situation was "a class action waiting to happen." She also said one worker, who she named, was dissatisfied with the resolution of her complaint. Displeased with her statements, general counsel criticized her for poor judgment at the meeting in a written performance evaluation two weeks later. The plaintiff responded with a five-page letter, copied to a DOE whistle-blower officer, complaining that she had suffered racial and sexual discrimination. The plaintiff's letter also discussed the dissatisfied co-worker's case. DynMcDermott fired the plaintiff, claiming she breached client confidences by sending her letter to outside parties. The plaintiff sued, alleging in part that she was terminated in retaliation for reporting discrimination. A federal jury agreed.

The 5th Circuit reversed. In its stinging opinion, the Court found that the plaintiff violated her duties of confidentiality and loyalty under the Louisiana Rules of Professional Conduct. Such ethical breaches are unprotected under Title VII, the Court concluded. *Douglas v. DynMcDermott Petroleum Operations Co.,* 144 F.3d at 373–76. The Court acknowledged that Douglas' letter constituted opposition to employment dis-

crimination—ordinarily a protected activity under Title VII. However, the plaintiff had demurred when a DOE official inquired whether to treat her letter as a whistle-blower complaint. Further, the Court noted, some opposition activity is so detrimental to an employer it is not "insulated from reprisal under Title VII's shield." The plaintiff's letter fell into this category, the Court concluded, because she had violated the attorney-client privilege. Obviously, Kaible's statements corroborating Meeker's sexual harassment charge are entirely different from the plaintiff-attorney's statement in *Douglas,* since here there was no attorney-client confidence at stake. In addition, Kaible did not waive his opposition claim, as did the plaintiff in *Douglas* by declining whistle-blower status.

ii. *Did Kaible Adequately Allege a Causal Connection Between the Protected Activity and the Adverse Action Demonstrating a Retaliatory Motive?*

The defendant next asserts that the Court should dismiss the complaint because "there was no reprisal." (Defendant's Memorandum of Law, at 7–8). This is merely a new spin on the defendant's "protected activity" argument, the defendant's theory being that since Meeker did *not* file her lawsuit and Kaible did not testify in connection with that matter until after the discharge, there was no retaliation as a matter of law. The Court disagrees, since it was retaliation in connection with Meeker's EEOC charge, and not her subsequent lawsuit, which lies at the heart of the reprisal claim.

In any event, the Court concludes that Kaible adequately alleged a causal connection between the protected activity and the adverse action demonstrating a retaliatory motive. The complaint states that approximately one month after U.S. Computer gave Kaible a generous bonus for "an excellent sales year," and praised his performance, the company discharged him during "cutbacks," even though no other sales representatives with major accounts were discharged. This was about the same time that Kaible met with U.S. Computer's attorneys and "told the truth" about Meeker's EEOC charge (Complaint, at ¶ 11). The circumstances surrounding his dismissal are adequate, in and of themselves, to make out this element of the claim. There is, however, also alleged direct evidence of the company's retaliatory motive. The complaint states that Davies, the CEO, approached Kaible and said he could not believe that Kaible would hurt U.S. Computer by "telling the truth." Davies also accused Kaible of not being part of "the team." (Complaint, at ¶ 12). These are classic remarks evidencing retaliatory motive, and, as such, support the plaintiff's claim.

## III. CONCLUSION

For the reasons stated above, it is hereby

**ORDERED,** that the defendant's motion pursuant to Rule 12(b)(6) to dismiss the complaint is denied.

**SO ORDERED.**