Michael R. PRESTIA, Ferdinand J. Iavarone, Catherine King, Thomas Scannapiego, Thomas Hogan, Helen J. Ghaney, Thomas Ghaney, Richard Doris, Joseph W. Pierce, and Maryellen Marx, Plaintiffs–Appellants,

v.

Terrence O'CONNOR, Stephen H. Weiner, Weyman A. Carey, Ronald J. D'Angelo, Gertrude Strohm, Michael J. Cilmi, Frederick M. Umane, Douglas A. Kellner, Crystal N. Paris, Vincent J. Velella, individually and as Commissioner members of the Board of Elections in the City of New York, Board of Elections in the City of New York, Richard Retcho, as Candidate or "Candidate Aggrieved" and Kevin Brawley, as Objector, Defendants–Appellees.

Docket No. 98–9336.

United States Court of Appeals,
Second Circuit.

Argued May 3, 1999.

Decided May 14, 1999.

Michael R. Prestia, College Point, NY, pro se.

George Gutwirth, Assistant Corporation Counsel of the City of New York (Michael D. Hess, Corporation Counsel, and Francis F. Caputo, Assistant Corporation Counsel, of counsel) for City Appellees.

Edward H. Wolf, Bronx, NY, for Appellees Richard Retcho and Kevin Brawley.

Before: CABRANES and SACK, Circuit Judges, and SHADUR,* District Judge.

PER CURIAM:

This appeal presents the question of whether our holding in *Rockefeller v. Powers*, 78 F.3d 44 (2d Cir.1996)—that the freedoms of speech and association guaranteed by the First and Fourteenth Amendments were violated by New York's signature requirement for petitions for access to 1996 Republican presidential primary ballots—applies to a numerically identical signature requirement for access to congressional primary ballots. Plain-

tiffs, who are members of the Conservative Party of New York State ("CP"), appeal *pro se* from the order and judgment of the United States District Court for the Eastern District of New York (David G. Trager, *Judge* ) denying their motion for a preliminary injunction and dismissing their complaint, which arose out of the rejection of a petition for "opportunity to ballot"— that is, "an opportunity to write in the name of a candidate or candidates, who need not be specified," on the primary ballot for selection of the CP's candidate for Member of the United States House of Representatives from New York's 7th Congressional District. N.Y. Elec. Law § 6–164.

We conclude that our holding in *Rockefeller v. Powers* was based on—and therefore limited to—the special circumstances of that case. Because no similar circumstances are presented here, we apply the general rule that a ballot access requirement of signatures from five percent of the relevant voter group ordinarily does not violate constitutional rights. Accordingly, we affirm the order and judgment of the district court.

**I.**

New York's election law provides that voters may "designat[e] ... a candidate for party nomination at a primary election" by filing a "designating petition." N.Y. Elec. Law § 6–118. In addition, voters may petition for "an opportunity to write in the name of a candidate or candidates, who need not be specified"—that is, they may petition for a write-in space to be included on the primary ballot. *Id.* § 6–164. With respect to "any office to be filled by all the voters of any congressional district," both designating petitions and write-in petitions must be signed by at least 5% or 1250 (whichever is less) of registered voters who are party members

---

* The Honorable Milton I. Shadur, of the United States District Court for the Northern District of Illinois, sitting by designation.

residing within the relevant district. *Id.* §§ 6–136(2)(g), 6–164.

In July 1998, a write-in petition was submitted to the New York City Board of Elections in connection with the CP's congressional primary for New York's 7th Congressional District. After defendant Brawley filed objections, as permitted by § 6–154, the Board of Elections rejected the petition because, *inter alia,* it did not meet the minimum of 140 signatures (5% of the 2800 registered voters who were members of the CP in the 7th District), and it failed to contain an "appointment of a committee to receive notices" as required by N.Y. Elec. Law § 6–166. Plaintiffs thereafter filed this action, alleging that the minimum signature requirement and "committee to receive notices" requirement violated their constitutional rights to freedom of speech and association. After a hearing on this and two similar cases, the district court denied a motion by plaintiffs for a preliminary injunction and granted a motion by defendants for dismissal pursuant to Fed.R.Civ.P. 12(b)(6). Judgment was entered accordingly, and this appeal followed.

## II.

■ We review *de novo* the dismissal of a complaint pursuant to Fed.R.Civ.P. 12(b)(6). *See Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996).

■ In assessing the constitutionality of a state election law, we balance the regulation's burden on the First and Fourteenth Amendment rights of voters against the state interests advanced by the regulation, taking into consideration the extent to which the burden is necessary to the advancement of those interests. *See Burdick v. Takushi,* 504 U.S. 428, 434, 112

S.Ct. 2059, 119 L.Ed.2d 245 (1992). When the regulation severely restricts the relevant rights, it must be narrowly drawn to advance a compelling state interest, but where the regulation imposes only reasonable, nondiscriminatory restrictions on those rights, "the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.* (internal quotation marks omitted). In assessing the burden imposed by the challenged regulation, we view the regulation in light of the state's overall election scheme. *See Schulz v. Williams,* 44 F.3d 48, 56 (2d Cir.1994).

■ States have an important interest in "requiring some preliminary showing of a significant modicum of support" before printing a candidate's name on the ballot, so as to "avoid[ ] confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson,* 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). Accordingly, a requirement that ballot access petitions be signed by at least 5% of the relevant voter pool is generally valid, despite any burden on voter choice that results when such a petition is unable to meet the requirement. *See id.* (upholding 5% signature requirement); *see also Hewes v. Abrams,* 718 F.Supp. 163, 167 (S.D.N.Y.) ("[U]nder *Jenness* a standardized 5% signature requirement would be constitutional . . . ."), *aff'd,* 884 F.2d 74, 75 (2d Cir.1989) ("affirm[ing] substantially for the reasons stated by" the district court); *Libertarian Party of Ill. v. Rednour,* 108 F.3d 768, 775 (7th Cir.1997) (relying on *Jenness* and upholding 5% signature requirement); *Rainbow Coalition of Okla. v. Oklahoma State Elec. Bd.,* 844 F.2d 740, 743 (10th Cir.1988) (relying on *Jenness* and stating that "the five percent requirement itself is undeniably constitutional").[1]

---

1. Because a write-in opportunity may create less confusion than the addition of specific candidates to the ballot, the state's interest in requiring a showing of support may not be as strong in this context. On the other hand, the absence of a write-in opportunity does not significantly burden voters' rights where, as here, voters have an opportunity to petition for the placement of specific candidates on the ballot. Indeed, if adequate ballot access is provided, it is constitutionally permissible for states to prohibit write-in voting altogether. *See Burdick,* 504 U.S. at 438–40.

In arguing to the contrary, plaintiffs rely on *Rockefeller v. Powers*, 78 F.3d 44 (2d Cir.), *aff'g* 917 F.Supp. 155 (E.D.N.Y. 1996), in which we found unconstitutional a 5%/1250 signature requirement for access to New York's presidential primary ballots, through which party members choose delegates on a district-by-district basis. The holding in *Powers*, however, was based on special circumstances that distinguished it from the cases cited above.

First, the district court in *Powers* found it significant that, although delegates were chosen by district, practical considerations required candidates to confront—and therefore allocate their resources among— all 31 New York districts, not to mention the other states. *See* 917 F.Supp. at 163–64. Historically, even the most viable and well-financed candidates, unless supported by the Republican State Committee, did not have the resources to mount a successful petition drive in every New York district, and some nationally prominent Republican candidates chose to forgo competing in New York at all. *See id.* at 158. Consequently, the district court concluded that "there will always be a significant number of districts without any contest, ... and an even greater number of districts with a very limited choice." *See id.* at 165.

Second, the New York Legislature had given each political party the option of choosing—for the purposes of the 1996 presidential primaries—between a 5%/1250 signature requirement and a 0.5%/1000 signature requirement. *See id.* at 164 (citing 1995 N.Y. Laws ch. 586). It was therefore apparent that although the Republican party leadership had an interest

in a 5% rule, the state's interest in requiring "a modicum of support" before granting ballot access could be met by the lesser requirement. *See id.*[2]

■ We conclude that the holding in *Powers* is attributable to—and, therefore, limited to—these special circumstances surrounding the presidential primary process, and that no similar circumstances are presented here. In a congressional primary, organizers of a ballot access petition focus exclusively on a single congressional district, and nothing in the record would support the suggestion that the 5%/1250 signature requirement, when viewed in light of the state's overall election scheme, precludes viable candidates and write-in campaigns, thereby resulting in primary elections that are uncontested or give voters only a very limited choice. Furthermore, the political parties are not permitted to opt for a 0.5%/1000 signature requirement in this context, and we decline plaintiffs' invitation to find that, because such a requirement is available for presidential primaries, the important state interest in a "modicum of support" was satisfied here when the write-in petition gained signatures from more than 0.5%— that is, more than 14—of the 2800 registered CP voters in the 7th Congressional District.

### III.

For the foregoing reasons, we agree with the district court that the signature requirement of N.Y. Elec. Law § 6-136(2)(g) does not violate freedoms of speech or association protected by the First and Fourteenth Amendments.[3] Ac-

---

**2.** Due to time constraints (the New York primary was scheduled to be held eight days after the *Powers* appeal was argued), "our decision [was] rendered with considerably less elaboration than is found in a typical opinion." 78 F.3d at 45. We agreed with the district court that candidates without the support of the state Republican leadership were "substantially burdened" by the signature requirements, *id.*, and that "th[e] alternative [0.5%/1000] requirement by its very existence

demonstrates that the 5%/1250 scheme is unnecessary to satisfy [ ] New York's interest in seeing that no candidate be on the ballot without substantial public support," *id.* at 46.

**3.** As noted above, plaintiffs also challenge the requirement of N.Y. Elec. Law § 6-166 that such petitions must include "[t]he appointment of a committee to receive notices." Even if this requirement were unconstitutional, the petition at issue would have been re-

cordingly, we affirm the district court's order denying plaintiffs' motion for a preliminary injunction, and its judgment dismissing the complaint.[4]

jected on the ground that it failed to meet the signature requirement, which we hold is constitutionally valid. In any event, nothing in the record suggests that a diligent organizer would have difficulty designing a write-in petition to include appointment of a committee to receive notices, such that the regulation would work to stymie such petitions and thereby significantly limit the options available to voters.

4. Defendant Retcho has moved for dismissal of the appeal and imposition of sanctions against Prestia for an alleged fraud on the court. However, the factual basis for the allegation—a claim that Prestia prosecuted this action in the name of other plaintiffs who were unaware of the nature of the case—is in dispute. For this reason, and in light of our disposition of the appeal on the merits, we deny the motion.